[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 71 
Darrell Grayson, the appellant, was indicted for the capital offense involving the nighttime burglary and intentional killing of Annie Laura Orr. Alabama Code Section 13A-5-31 (a)(4) (1975). Both counts of the indictment charged Grayson with breaking and entering with the intent to commit robbery and intentional killing. A jury found Grayson "guilty of the capital offense as charged in Count One and Two of the indictment." After a punishment hearing, the jury "fix(ed) the defendant's punishment at death." After a sentencing hearing, the trial judge followed the jury's recommendation and sentenced Grayson to death by electrocution.
Victor Kennedy was Grayson's accomplice and co-defendant. We affirmed his conviction and death sentence in Kennedy v.State, 472 So.2d 1092 (Ala.Cr.App. 1984).
 I
Initially, Grayson argues that his fundamental Sixth Amendment right to the effective assistance of counsel was denied because, as an indigent, he was not provided funds with which to hire experts.
"The question whether an indigent defendant is entitled to state-furnished funds for investigative purposes, tests, expert testimony, and other assistance in his defense in criminal cases has been recognized as an ever-growing problem." Annot. 34 A.L.R.3d 1256, Section 2 (b) (1970). In Thigpen v.State, 372 So.2d 385, 386 (Ala.Cr.App.), cert. denied,Ex parte Thigpen, 372 So.2d 387 (Ala. 1979), this Court held that the denial of funds to pay experts does not amount to a deprivation of constitutional rights, despite the contention that *Page 72 
the right to the effective assistance of counsel is meaningless without such assistance. Despite that holding, it seems clear, under the developing case law, that both federal and state constitutional guarantees may require a state to provide an indigent criminal defendant with expert assistance. 34 A.L.R.3d at Section 3 (a). However, even those cases which recognize the existence of such a constitutional right do not establish it as an absolute right in every case. The threshold question requires the showing of a need for the requested services.Ex parte Argo, 42 Ala. App. 546, 547, 171 So.2d 259
(1965). We recognized in Gwin v. State, 425 So.2d 500,508 (Ala.Cr.App. 1982), cert. quashed, 425 So.2d 510 (Ala. 1983), that before determining whether fundamental fairness requires that an accused be afforded the opportunity to have an expert of his choosing examine a piece of "critical evidence whose nature is subject to varying expert opinion", it should first be determined that the evidence is "critical". Evidence is "critical" for purposes of the due process clause if it could induce a reasonable doubt in the minds of enough jurors to avoid a conviction when that evidence was developed by skilled counsel and experts. White v. Maggio,556 F.2d 1352, 1357-58 (5th Cir. 1977); Gwin, supra.
We recognize that due process and fair play may demand that the accused be furnished with assistance of experts in preparing his defense. Nevertheless, under the facts of this case, the State was not constitutionally required to provide this indigent with the services of expert witnesses. Hobackv. Alabama, 607 F.2d 680, 682 (5th Cir. 1979).
In making his finding of facts, the trial judge found that none of the latent fingerprints found at the scene matched either Grayson or his accomplice, that semen found at the scene could be typed as consistent with that of Grayson, that the blood found on Grayson's shirt was consistent with Mrs. Orr's blood type, and that a hair taken from Grayson's sock at the time of his arrest was consistent with the head hair of Mrs. Orr. At best, the expert testimony could only negate the possibility that Grayson could not have committed the crime. Each expert testified, in effect, that there was no way that the various bodily substances could be positively identified as having come from one particular individual. The record contains no suggestion that the test results were subject to "varying expert opinion" or that there was any question about the validity or accuracy of the tests performed.
Here, the facts show that Grayson requested funds to employ experts. The trial judge granted Grayson's motion "up to the statutory financial limits of Alabama law." See Bailey v.State, 421 So.2d 1364 (Ala.Cr.App. 1982). The judge also granted Grayson's motion for discovery and ordered the State to produce, among other items, "any and all scientific reports, (and) a presentation of all the physical evidence to be presented at trial." In addition, Grayson was given a complete physical and mental examination at state expense.
Even those cases which recognize that the effective assistance of counsel embraces the allowance of funds for an indigent defendant to obtain investigative services to assist in the preparation of his defense hold that such an allowance is far from automatic and depends on the circumstances of the particular case.
 "Our reflections on this point are congruent with the standard applicable when counsel for an indigent defendant seeks funds to obtain investigative services to assist in the preparation of the defense. While in general effective assistance of counsel embraces such an allowance it is far from automatic and `depends on the facts and circumstances of a particular case', with funds provided when counsel makes a showing of necessity of the specific subjects to be explored and of their likely materiality." United States v. DeCoster, 624 F.2d 196, 210
(D.C. Cir. 1976).
The circumstances of this case do not support Grayson's contention that his constitutional right to the effective assistance of *Page 73 
counsel was violated because he was not afforded funds for the hiring of experts.
 II
Grayson further argues that the State of Alabama deprives indigent capital defendants of equal protection of the law because lawyers in both capital and noncapital cases are paid at the same rate. Grayson argues, much as he did in Issue I, that when the state's appointed counsel compensation statute (Alabama Code Section 15-12-21 (1975)) is "applied to an indigent defendant charged with a capital offense it falls miserably short of providing defense counsel with adequate funds with which to provide an effective defense." This issue was partially answered in Issue I. The remainder of the answer is found in Sparks v. Parker, 368 So.2d 528, 530 (Ala. 1979), where our Supreme Court stated:
 "In presenting this claim, appellants assert that if attorneys are underpaid, they cannot satisfactorily perform the constitutional guarantee of right to counsel. However, no facts or data are shown in the record in support of this contention. Moreover, Judge Parker indicated in his June 28, 1978, order that the trial court `has not observed any great disparity between appointed and retained counsel' and notes that `(t)he same attorneys that are appointed are also the ones that are retained.' Addressing a similar contention, the New Jersey court made the following observations in State v. Rush, 46 N.J. 399, 405-407, 217 A.2d 441, 444-445 (1966):
 "`As to the right of an accused, appellant contends that counsel, if unpaid, cannot by his performance satisfy the constitutional guarantee of the right to the aid of counsel. We know of no data to support a claim that an assigned attorney fails or shirks in the least the full measure of an attorney's obligation to a client. Our own experience, both at the bar and on the bench, runs the other way. A lawyer needs no motivation beyond his sense of duty and his pride.'"
 III
Grayson contends that his motion for change of venue was due to be granted because the "pretrial publicity coupled with the nature of the crime and the fact that the deceased was well-known in the (small) community created such an air of prejudice in the county" as to deny him a fair trial. We disagree. In Kennedy v. State, supra, we treated this issue with regard to Grayson's co-defendant. Much of what we said there applies here.
The crime was committed on December 24, 1981. Trial was held May 31, 1982. Between those two dates 13 articles concerning the crime were printed in The Shelby County Reporter.
Kennedy was tried in February of 1982. A telephone survey of Shelby County residents was conducted. The pollster admitted that a portion of the residents of the county may not have been included in the survey.
A survey was also conducted before Kennedy's trial. Although the surveys were conducted by different individuals, their findings were similar. Here, the pollster's findings were that 125 people responded and of that number 48.8% had heard, read, or seen reports of Mrs. Orr's death; 30.4% had heard, read, or seen information concerning the arrest of two individuals; 17.6% had heard, read, or seen reports of Kennedy's conviction; 12.8% had heard, read, or seen reports concerning Grayson; and 24% admitted a knowledge of Mrs. Orr or members of her family. This survey does not show either an actual prejudice against Grayson or a community saturated with inherently prejudicial information or feeling.
Further, in qualifying the jury venire, the trial judge asked, "Do any of you have a fixed opinion as to the guilt or as to the innocence of the defendant which will bias your verdict?" and "Do you know anything about the facts of this case?" There was no response to either question.
The constitutional requirement of juror impartiality does not limit jury membership to persons ignorant of the facts *Page 74 
and issues involved in the case. Irvin v. Dowd,366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Murphy v.Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589
(1975). "According to the due process standards established inIrvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639,6 L.Ed.2d 751 (1961), the Constitution does not entitle a criminal defendant to a trial by a body of jurors ignorant of all facts surrounding a case, but only an impartial jury that will render a verdict based exclusively on the evidence presented in the court." United States v. Malmay, 671 F.2d 869, 876
(5th Cir. 1982) (a change of venue was unnecessary even though public polls indicated that 48% of those surveyed had heard of case because voir dire examination revealed no bias in the jurors). Here, as in Malmay, the voir dire examination serves to refute any allegation of bias or prejudice which Grayson has advanced. There is nothing in the record to suggest that the jurors could not or did not render a verdict based solely on the evidence presented at trial. There has been no showing that the trial judge abused his discretion in denying the motion for change of venue and therefore his judgment is due to be upheld.
In making this determination, we recognize that the crime was extremely atrocious, that Grayson is black and Mrs. Orr is white, that Montevallo is a relatively small community, and that Mrs. Orr is a member of a socially prominent family in that community. All these factors could have caused prejudice among individual jurors or created pervasive hostility within the community. However, the record does not reflect that, and, in fact, refutes Grayson's speculation regarding this issue.
 IV
In connection with Issue III, Grayson argues that, had the defense not been limited to the statutory limitation on extraordinary expenses of $500 under Alabama Code Section15-12-21 (1975), he "would have been more than likely to carry his heavy requisite and burden of proof in establishing actual prejudice and would have obtained his change of venue." (Appellant's Brief, p. 26).
This argument is without merit. "The proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination."Anderson v. State, 362 So.2d 1296, 1299 (Ala.Cr.App. 1978). It costs nothing to question the venire.
Grayson criticizes the "Alabama procedure of requiring a defendant to show actual prejudice before a change of venue is granted" as being "inherently unjust and unfair." However, the rule is that an accused must show either actual juror prejudice or pervasive hostility within the community.Franklin v. State, 424 So.2d 1353, 1354 (Ala.Cr.App. 1982), and cases cited therein. In some cases, it is recognized that the publicity may be inherently prejudicial, as where the totality of the circumstances involving the media coverage results in inherently prejudicial publicity when "newsmen took over practically the entire courtroom", Sheppard v.Maxwell, 384 U.S. 333, 355, 86 S.Ct. 1507, 1518,16 L.Ed.2d 600 (1966); by the process of televising the defendant's notorious, heavily publicized, and highly sensational criminal trial, Estes v. Texas,381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); where the accused confesses on television, Rideau v. Louisiana,373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); or so many veniremen have fixed opinions that suspicion is cast upon all, Murphyv. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589
(1975).
Here, after all the arguments are made, the fact remains that there has been no showing of inherently prejudicial publicity or circumstances which warrant a finding or presumption of either actual or implicit juror prejudice.
 V
Alabama Code Section 12-16-70 (1975) provides that the judge, after drawing the names of the venire from the jury box for the next term of court, shall forward those names to the clerk, "who shall *Page 75 
retain possession thereof without disclosing to anyone the names drawn nor any list thereof." Although Grayson argues that the District Attorney was given access to the jury roll after it was delivered to the sheriff but before defense counsel obtained a copy, the evidence does not support this claim. Moreover, we find no ground for complaint by defense counsel. Section 12-16-70 further provides that, upon receiving the names drawn by the judge, the clerk
 "shall make a list of names drawn, showing the date on which the prospective jurors shall appear and in what court they shall serve and shall enter opposite every name the residence address, and may include for informational purposes to counsel, the occupation of the person and his place of business, and the clerk shall issue a venire list containing the names and information to the sheriff who shall forthwith summon the persons named thereon . . . to appear and serve as jurors. The accuracy of any information which might be furnished to counsel shall not be grounds for challenging a verdict rendered by a jury."
(Emphasis added).
 In our opinion, this statute implies that once the list is delivered to the sheriff it shall be available to counsel.
 VI
As we held in Kennedy, supra, the holding ofBufford v. State, 382 So.2d 1162, 1173-74
(Ala.Cr.App.), cert. denied, 382 So.2d 1175 (Ala. 1980), andKeller v. State, 380 So.2d 926, 937 (Ala.Cr.App. 1979), cert. denied, 380 So.2d 938 (Ala. 1980), was repudiated in Kyzer v. State, 399 So.2d 330, 334-39 (Ala. 1981). The correct rule is that the aggravating circumstance charged in the indictment may be used as the circumstance aggravating that charge. Julius v. State, 455 So.2d 975
(Ala.Cr.App. 1983); Dobard v. State, 435 So.2d 1338
(Ala.Cr.App. 1982), affirmed, 435 So.2d 1351 (Ala. 1983).
 VII
Grayson argues that his confessions were involuntary upon a consideration of the totality of the circumstances that he was questioned within twelve hours after the crime was committed, was only nineteen years old with a tenth grade education, and was "under a great deal of fear, shame and duress."
On two separate occasions, the trial judge made specific written findings that Grayson's statements were voluntarily made after knowing and intelligent waivers of his constitutional rights under Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although two separate suppression hearings were held, Grayson never presented any evidence to contradict the State's showing of voluntariness. The facts are so clear that the statements were voluntary that they do not bear repeating. Suffice it to say that nothing other than sheer speculation, utter conjecture, and groundless surmise will even cast a taint on the voluntariness of Grayson's statements.
 VIII
In accordance with Beck v. State, 396 So.2d 645
(Ala. 1980), we make the following determinations. (1) Grayson was indicted and convicted for a crime which was in fact punishable by death. Alabama Code Section 13A-5-31 (a)(4) (1975) is by statutory definition and designation a capital offense. (2) Similar crimes are being punished capitally throughout the state. Lindsey v. State, 456 So.2d 383
(Ala.Cr.App. 1983), appeal pending; Clisby v. State,456 So.2d 86 (Ala.Cr.App. 1982), affirmed in part and remanded in part, 456 So.2d 95 (Ala. 1983). Victor Kennedy, Grayson's accomplice and partner, also received the death penalty for his participation in this same crime. Kennedy v. State,472 So.2d 1092 (Ala.Cr.App. 1983). (3) The sentence of death is unquestionably proper for Grayson who burglarized, beat, terrorized, raped, and suffocated to death a helpless 86-year-old lady. Both Kennedy's and Grayson's crimes are more characteristic of the actions of wild ravaging dogs of hell *Page 76 
rather than even the lowest and most depraved level of humanity.
In reviewing this death sentence, we also make the following findings according to Alabama Code Section 13A-5-53 (1975). (1) There is no evidence that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. (2) Our independent weighing of the aggravating and mitigating circumstances supports the findings of the trial judge that "the capital felony was committed while the defendant was engaged in the commission of a rape, robbery, and burglary", that "the capital felony was especially heinous, atrocious, and cruel." We find that the mitigating circumstances are so poor in quality and small in number as to be almost nonexistent. We further find that any single aggravating circumstance far outweighs all the mitigating circumstances. (3) Finally, considering both this particular crime and this particular defendant, we determine that death is neither excessive nor disproportionate to the penalty imposed in similar cases.
In reviewing the proportionality of Grayson's sentence to death we have considered his argument, presented initially in his reply brief on appeal, that similar crimes throughout this state are not being punished capitally. Grayson's argument is grounded on the fact that recently within this state Jerry D. Hamilton was permitted to plead guilty to noncapital offenses involving the murder and kidnapping of twenty-six-year-old Melissa "Missy" DeVaughn.
Although no information concerning Hamilton is contained in the record of the proceedings below, the events surrounding the Alabama Attorney General's plea bargain agreement with Hamilton were well publicized and have been supplemented by the affidavit of an assistant attorney general. It appears that Hamilton was permitted to plead guilty on the condition that he reveal the location of Mrs. DeVaughn's body, which had not been located after extensive and intensive search efforts by county and state authorities. The Attorney General asserts that, without the body, there was insufficient evidence to prove the corpus delicti of a capital murder because there was no physical or scientific evidence to link Hamilton to the murder. Additionally, part of the plea bargain was that Hamilton would plead guilty to a federal kidnapping charge.
The Hamilton case is factually distinguishable from the one now under review. However, in neither Hamilton's case nor in Grayson's was the sentence imposed in an arbitrary and capricious manner.
We have searched the entire record for error and found none. That search and our review of this appeal convince us that the judgment of the circuit court is due to be affirmed.
AFFIRMED.
All Judges concur.