543 So.2d 704 (1987)
Fredrick LYNN
v.
STATE.
4 Div. 698.
Court of Criminal Appeals of Alabama.
March 10, 1987.
On Return to Remand June 9, 1987.
Rehearing Denied July 28, 1987.
*705 Donald J. McKinnon, Eufaula, for appellant.
Don Siegelman, Atty. Gen., and P. David Bjurberg and William D. Little, Asst. Attys. Gen., for appellee.
*706 BOWEN, Presiding Judge.
In 1983, sixteen-year-old Fredrick Lynn was convicted and sentenced to death for the capital offense involving burglary and the murder of Marie Driggers Smith. Alabama Code 1975, § 13A-5-31(a)(4). That conviction and sentence were reversed on appeal. Lynn v. State, 477 So.2d 1365 (Ala.Cr.App.1984), reversed, Ex parte Lynn, 477 So.2d 1385 (Ala.1985).
On remand, Lynn v. State, 477 So.2d 1388 (Ala.Cr.App.1985), Lynn was retried and again convicted and sentenced to death. This appeal is from that second conviction and sentence.

I
On the issue of the alleged use of racial discrimination by the prosecutor in his peremptory jury strikes, the parties agree that this case is controlled by Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and Ex parte Jackson, 516 So.2d 768 (Ala.1986).
Our independent review of the record convinces us of the propriety of the Attorney General's recommendation that this cause be remanded for an evidentiary hearing on this issue. Therefore, it is the judgment of this Court that this cause be remanded to the Circuit Court of Barbour County with directions that an evidentiary hearing be conducted. The trial court should determine whether or not the facts establish a prima facie case of purposeful discrimination. If a prima facie case of purposeful discrimination is established and the prosecution does not come forward with race-neutral explanations for its strikes, then Lynn is entitled to a new trial. If the trial judge finds that there was no purposeful discrimination involved in the selection of the jury, he is directed to forward to this Court a transcript of the evidentiary hearing together with a report of his factual findings.

II
The defendant's challenge for cause of venireman Little was properly denied. Little had been the mayor of Eufaula and in that capacity had exercised "supervisory authority" over Captain Ted Dotson and Lieutenant Earlie Dinkins of the Eufaula Police Department. Both officers participated in the investigation of the crime for which Lynn was convicted and both testified at his trial. Little indicated that having served in that supervisory capacity over the officers would not affect his ability to render a fair and just verdict.
In the absence of any showing that Mayor Little actually exercised his "supervisory authority" over the officers at any time during the investigation or that he participated in the investigation, we find that the challenge for cause was properly denied. See Lowe v. State, 384 So.2d 1164, 1171 (Ala.Cr.App.), cert. denied, Ex parte Lowe, 384 So.2d 1171 (Ala.1980) (The fact that the venire person was employed by the district attorney's office did not alone impute bias as a matter of law.); Nettles v. State, 435 So.2d 146 (Ala.Cr.App.), affirmed, Ex parte Nettles, 435 So.2d 151, 152-53 (Ala.1983) (Employment of a prospective juror by the victim of a crime, though not a party to the subsequent criminal prosecution, does not in itself give rise to an implied bias as a matter of law and, hence, does not provide a ground for automatic disqualification of the juror for cause.).

III
Lynn's motion for a random reduction of the jury panel to a level that would ensure that some blacks served on the jury was properly denied. While a defendant has a right to be tried by a jury whose members are selected "pursuant to nondiscriminatory criteria", Batson, 476 U.S. at 86, 106 S.Ct. at 1717, "a defendant has no right to a `petit jury composed in whole or in part of persons of his own race.'" Batson, 476 U.S. at 85, 106 S.Ct. at 1716, quoting Strauder v. West Virginia, 10 Otto 303, 100 U.S. 303, 305, 25 L.Ed. 664 (1880).

*707 IV
Lynn's motion to be allowed two jury strikes for each strike the State received was properly denied. Lynn, 477 So.2d at 1377. See also Robinson v. State, 428 So.2d 148, 152 (Ala.Cr.App.1982), cert. denied, 462 U.S. 1137, 103 S.Ct. 3122, 77 L.Ed.2d 1374 (1983).

V
State Investigator A.G. Tew was properly permitted to describe the condition of the rooms in the victim's house and testify that "they were ransacked." The investigator's opinion was, in this case, merely a statement of "collective fact" or a "shorthand rendition of fact[s]." Murrell v. State, 377 So.2d 1102, 1106 (Ala.Cr. App.), cert. denied, Ex parte Murrell, 377 So.2d 1108 (Ala.1979). See also Kozlowski v. State, 248 Ala. 304, 306, 27 So.2d 818 (1946). We view his use of the word "ransacked" as merely a summary of his other testimony and cumulative to the other evidence of the condition of the rooms in the victim's house, especially the photographs.

VI
The trial court did not err in allowing the prosecutor to ask state witness Herbert Bouier, "Do you know [Marie Driggers Smith] was killed on February 5th of [1981]?" Since the date of the victim's death had already been established by the testimony of prior witnesses and since that date was never a contested issue at trial, the trial court did not abuse its discretion in allowing the leading question. "[T]he trial judge has discretion to allow some leading questions, especially since prior testimony is simply being repeated." Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 944 (Ala.1983). "Whether to allow or disallow a leading question is within the discretion of the trial court and except for a flagrant violation there will not be reversible error." Bradford v. Stanley, 355 So.2d 328, 331 (Ala.1978).
Furthermore, the witness testified that he was not familiar with the date.

VII
In closing argument to the jury, the district attorney stated that, when accomplice Strong "laid it on the line on September 23, 1982, without any promising or any help from anybody and told me who pulled that trigger, I believed it." (Emphasis added.) Even if we consider this argument improper because it injects the prosecutor's personal opinion and knowledge into the case, Clark v. State, 462 So.2d 743, 746-48 (Ala.Cr.App.1984), the error was cured when the trial judge immediately instructed the jury that "the District Attorney's statement that he believes that particular part of the testimony is ... improper, and I'll ask you to disregard that and not consider that in arriving at your verdict." Chambers v. State, 382 So.2d 632, 634 (Ala.Cr. App.), cert. denied, Ex parte Chambers, 382 So.2d 636 (Ala.1980).

VIII
Lynn raises four issues which this Court addressed on his first appeal. We have reviewed those alleged errors within the context of Lynn's second conviction and find that our prior opinion adequately answers each issue.
Therefore, we find (1) that Lynn was not convicted on the uncorroborated testimony of an accomplice, Lynn, 477 So.2d at 1369-71; (2) that Investigator Tew's testimony that he did not notify witness Green prior to going to Spain to interview him did nothing to enhance Green's credibility, Lynn, 477 So.2d at 1379; (3) that the admission of the sawed-off barrel portion of a .20-gauge shotgun was proper, Lynn, 477 So.2d at 1372-73; and (4) that the Alabama Death Penalty Statute under which Lynn was convicted is constitutional, Lynn, 477 So.2d at 1378.

IX
Pursuant to A.R.A.P., Rule 45A, we have searched the record and found no error that has or probably has affected the substantial right of the appellant.
The following three considerations are made pursuant to the requirements of Beck *708 v. State, 396 So.2d 645, 664 (Ala.1980). (1) Lynn was indicted and convicted for an offense which is a capital offense by statutory definition. Lynn, 477 So.2d at 1380. (2) "Similar crimes are being punished capitally throughout Alabama." Lynn, 477 So. 2d at 1380. See Grayson v. State, 479 So.2d 69 (Ala.Cr.App.1984), affirmed, Ex parte Grayson, 479 So.2d 76 (Ala.), cert. denied, Grayson v. Alabama, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985) (nighttime burglary/intentional killing under § 13A-5-31[a][4]); Kennedy v. State, 472 So.2d 1092 (Ala.Cr.App.1984), affirmed, Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, Kennedy v. Alabama, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985) (nighttime burglary/intentional killing under § 13A-5-31[a][4]); Clisby v. State, 456 So. 2d 86 (Ala.Cr.App.1982), reversed on other grounds, Ex parte Clisby, 456 So.2d 95 (Ala.1983) (nighttime burglary/intentional killing under § 13-11-2[a][4]); Lindsey v. State, 456 So.2d 383 (Ala.Cr.App.1983), affirmed, Ex parte Lindsey, 456 So.2d 393 (Ala.1984), cert. denied, Lindsey v. Alabama, 470 U.S. 1023, 105 S.Ct. 1384, 84 L.Ed.2d 403 (1985) (burglary/murder under § 13A-5-40[a][4]). (3) The death sentence is appropriate in relation to this appellant. See Lynn, 477 So.2d at 1380. As in the original trial, the trial judge again found the existence of only one aggravating and one mitigating circumstance. See Lynn, 477 So.2d at 1380.
Pursuant to § 13A-5-53, Code of Alabama 1975, we make the following findings: (1) Other than the allegations of racial discrimination in the selection of the jury, see Issue I of this opinion, there is no evidence that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. (2) Our independent weighing of the aggravating and mitigating circumstances indicates that death is the proper sentence. (3) The sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
This cause is remanded to the Circuit Court of Barbour County for the reason stated in Issue I of this opinion.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Presiding Judge.
On remand, the trial court fully complied with the order of this Court. In consideration of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), an evidentiary hearing was held after which the trial court issued a written order in which it made the following findings of fact:
"1. That a prima facie case of purposeful discrimination was established by the fact that the strike list affirmatively shows that the prosecution struck all of the blacks from the venire. The Court then called on the prosecution for its reasons for its strikes.
"2. That the District Attorney, Sam A. LeMaistre, Jr., explained the reasons that he struck every black from the jury and that each and every reason that he gave was race-neutral. Further, the reasons given were sufficient for any competent attorney to strike that particular venireman.
"3. The Court further finds that the testimony given by the District Attorney was truthful and that there was no purposeful racial discrimination involved in the selection of the jury that tried the above named defendant and the defendant is not entitled to a new trial, it is:
"THEREFORE, ORDERED that a new trial for the defendant Frederick Lynn be and the same is hereby denied."
At that hearing, the District Attorney testified, under oath, and the trial court allowed defense counsel to cross-examine the witness. The District Attorney's stated reasons for striking the eleven black persons from the jury venire are as follows: (1) The juror was the brother of a man the District Attorney had criminally prosecuted and convicted "on several occasions" *709 and the brother of another man against whom the District Attorney's Office was "presently enforcing child support." (2) The juror's husband was related to the defendant's father. (3) The juror was twenty-five years old and "reputed to be connected with drugs." His father had a felony record and had been convicted of a drug related offense. The juror also lived in the same area of the county as did the lead defense counsel. (4) The juror lived in an area where the defendant was living at the time of the crime and where the defendant's aunt and grandmother had lived for "numerous years." (5) The juror was a co-employee of the father of Gary Marcus Strong, an accomplice and co-defendant and a key witness against the defendant. Strong had a "bad reputation" and had pleaded guilty "to a crime in connection with [the] crime" for which the defendant was being tried. If the juror knew of Strong, he might not believe his testimony. Additionally, a small community was involved and the juror's name was Jackson. The District Attorney had prosecuted and convicted eight people named Jackson in the past eight years. The District Attorney suspected that the juror might be related to one of those convicts. (6) The juror was twenty-eight years old, unemployed, and lived close to a city magistrate. The lead defense counsel was the city clerk and the mayor assisted defense counsel in striking the jury. (7) The juror lived one block from co-defendant Strong. The District Attorney "felt that anyone that knew [Strong] might doubt what he was telling even though he was under oath." The juror also lived in "a very high crime district" and might "not be as shocked or opposed to crime because of those things." (8) The juror was a neighbor of the defendant's grandmother and aunt and lived in close proximity to the defendant when the crime was committed. (9) The juror was a friend of, and worked with, the wife of the father of the defendant. (10) The eighty-year-old juror appeared "feeble and hard of hearing" and "somewhat weak on death qualifications." (11) The juror was twenty-three years old, had a child fathered by co-defendant's Strong's brother, and was related by marriage to a state investigator who would testify as a witness. The investigator felt she would not be favorable to the State's case.
Our independent review of the record supports the findings of the trial court. The judgment of that court is affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.