* This defendant's name appeared as Fredrick Lynn in the Court of Criminal Appeals. His petition in the Supreme Court was under the name Frederick Lynn.
We issued the writ of certiorari to review the decision of the Court of Criminal Appeals in Lynn v. State, 543 So.2d 704
(Ala.Crim.App. 1987), which affirmed Lynn's conviction for capital murder and the trial court's imposition of the death sentence. The writ was issued as a matter of right pursuant to Rule 39(c), A.R.App.P.
The facts of this case have been thoroughly set forth in previous opinions.[1] Suffice it to say that in 1983, 16-year-old Frederick Lynn was convicted in the Circuit Court of Barbour County and was sentenced to death for the capital offense involving burglary and the murder of Marie Driggers Smith.[2] The conviction and sentence were initially affirmed by the Court of Criminal Appeals, Lynn v. State, 477 So.2d 1365
(Ala.Crim.App. 1984), but were then reversed by this Court, Ex parte *Page 711 Lynn, 477 So.2d 1385 (Ala. 1985).[3] On remand, Lynn was retried, again convicted, and again sentenced to death. On appeal, the Court of Criminal Appeals remanded the cause to the Circuit Court of Barbour County with directions to conduct an evidentiary hearing on the prosecutor's alleged use of racially discriminatory peremptory jury strikes. Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). On remand, the trial court conducted such a hearing, finding that although aprima facie case of purposeful discrimination was established, in that the prosecution struck all blacks from the jury venire, the reasons advanced by the prosecutor for the strikes were race-neutral and therefore rebutted the prima facie case. Determining that no purposeful discrimination was involved in the selection of the jury, the trial court accordingly concluded that Lynn was not entitled to a new trial. On return to remand, the Court of Criminal Appeals extended its opinion and affirmed the judgment of the trial court.[4] Lynn's petition in this Court followed.
 I
As previously indicated, the Court of Criminal Appeals, on return to remand, accepted the findings of the trial court that the prosecutor's peremptory jury strikes were not racially motivated. Lynn contends that those findings are erroneous and are due to be reversed under the rationale of Batson v.Kentucky, supra.
At the hearing on remand, the district attorney, testifying under oath, set forth his reasons for the use of each of his peremptory strikes of black venirepersons. Lynn asserts that those reasons are insufficient under the holding ofBatson, supra, because the reasons given, he says, are inherently vague and could apply to any member of the jury venire. Lynn, moreover, asserts that it is no coincidence, and that racial discrimination is clearly demonstrated, when all 11 blacks out of a qualified panel of 38 prospective jurors are eliminated by the prosecutor's peremptory strikes. Lynn also maintains, as a general proposition, that because the reasons given by prosecutors to justify their peremptory strikes are usually vague and numerous, appellate courts should utilize a "result-oriented" approach in evaluating whether the State has presented sufficient race-neutral reasons for its peremptory challenges. We have carefully reviewed the record on remand and find these contentions to be without merit.
The record shows that the reasons given by the district attorney for his peremptory strikes in this case are very specific and are not generally applicable to any number of other persons; those reasons arose from the particular facts of this case. They ranged from the fact that one venireperson's husband was related to the defendant; another one had been prosecuted several times by the district attorney in this case; another worked with the co-defendant's father; and two others lived in the same neighborhood as the defendant's grandmother and aunt. Another venireperson was connected with drugs and was from the same county as the defense attorney; one was 80 years old, feeble, hard of hearing, and did not seem to favor the death penalty; one worked with and was a friend of the defendant's stepmother; and another lived one street over from the co-defendant. Finally, two of the prospective jurors were quite young, one of them living near a person who worked with the defense attorney (the defense attorney was also the Eufaula city clerk), and the other being a classmate of the co-defendant as well as having a child by the co-defendant's brother. *Page 712 
On cross-examination by defense counsel, no inconsistency was revealed between the district attorney's stated reasons in this case and his practice in striking generally. The district attorney also testified that he "struck around" certain people that he trusted and wanted on the jury.
Although Lynn argues that the reasons the district attorney gave for his peremptory strikes of three venirepersons are suspect, we note that "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." Batson, supra, 476 U.S. at 97, 106 S.Ct. at 1723. It is within the sound discretion of the trial court to determine if the State's peremptory challenges of black jurors are motivated by intentional racial discrimination. Ex parte Jackson,516 So.2d 768 (Ala. 1986). Moreover, the trial court's findings as to whether the defendant has established purposeful racial discrimination are to be accorded great deference on appeal,Batson, supra, 476 U.S. at 98, 106 S.Ct. at 1724, and should be reversed on appeal only if they are clearly erroneous. Ex parteBranch, 526 So.2d 609 (Ala. 1987).
Based on the foregoing, we find no "clear error" in the trial court's determination. Moreover, we decline to articulate the mechanical result-oriented approach urged by Lynn, for such a procedure is not contemplated by the holding inBatson, supra.
 II
Lynn next argues that the sincerity of the race neutral reasons advanced by the district attorney to justify his strikes of prospective black jurors cannot be fully evaluated by the trial court in the absence of extensive cross-examination by defense counsel. This assignment of error is predicated on the trial court's disallowance of two questions, one in part and the other in its entirety, directed to the district attorney on cross-examination.
Although the trial court permitted full cross-examination of the district attorney regarding the persons who actually served on the jury, it disallowed questions as to whether the same reasons advanced by the district attorney for striking certain blacks would be applicable to potential jurors struck by the defendant.[5] Lynn thus argues that prosecutors should be required not only to give specific reasons for striking potential black jurors, but also to demonstrate why certain venirepersons were not struck. Such a right of unlimited cross-examination would be a substantial expansion of the holding in Batson, supra, and we decline to adopt it. We conclude that the trial court did not err in refusing to permit Lynn to cross-examine the district attorney as to venirepersons he did not strike.
 III
Lynn's third argument is that the trial court erred in denying his motion that the court order the district attorney not to use his peremptory strikes in such a manner as to exclude all blacks from the jury. Lynn proposes that this Court adopt a rule that would require, for the benefit of minority criminal defendants, proportionate minority representation on juries in counties that have a significant minority population.
Lynn's reliance on Batson for these arguments is misplaced. In Batson, the United States Supreme Court held that striking black venirepersons on the basis of race is improper; striking black venirepersons for non-racial reasons is not improper, however, even if it results in a jury that contains no blacks. "[A] defendant has no right to a 'petit jury composed in whole or in part of persons of his own race.' " Batson, supra,476 U.S. at 85, *Page 713 106 S.Ct. at 1719, quoting Strauder v. West Virginia, 100 U.S. 303,25 L.Ed. 664 (1879). Therefore, Lynn's motion was correctly denied, and we decline to adopt the proportionate representation rule Lynn urges.
 IV-XIV
The remaining issues Lynn raises are substantially the same issues that were presented to the Court of Criminal Appeals. We have carefully reviewed the record, thoroughly scrutinized the holding of the Court of Criminal Appeals, and considered the propriety of the death penalty in this case pursuant to Ala. Code 1975, § 13A-5-53(a). We find that there were no errors adversely affecting Lynn's rights.
Accordingly, the judgment of the Court of Criminal Appeals is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, SHORES and HOUSTON, JJ., concur.
MADDOX and JONES, JJ., concur specially.
ADAMS, J., dissents as to Part I but concurs as to the remainder of the opinion.
[1] A short synopsis of the underlying facts may be found in the opening paragraphs of the initial reported opinion of the Court of Criminal Appeals: Lynn v. State, 477 So.2d 1365, 1369
(Ala.Cr.App. 1984). A full account of the facts may be found in a written order of the trial court issued following Lynn's original sentencing hearing in 1983. This order appears in its entirety as appended to the initial opinion of the Court of Criminal Appeals, id., at 1381-84.
[2] Ala. Code 1975, § 13A-5-31(a)(4).
[3] In that decision, this Court held that reversal was required based upon the trial court's granting of the State's motion inlimine, which precluded any inquiry for impeachment purposes by defense counsel concerning the juvenile record of a prosecution witness (Garrett Marcus Strong) who was also an admitted accomplice to the crime.
[4] Because the hearing on remand in this case complies procedurally with Batson, supra, a second hearing under the criteria established by this Court in Ex parte Branch,526 So.2d 609 (Ala. 1987), is not required. Scales v. State,539 So.2d 1074 (Ala. 1988).
[5] The defense attorney's question that was disallowed in part by the trial court was as follows:
 "Q: All right. Now among the individuals that you did not strike, were there not some whose relatives you had prosecuted?"
The trial court limited this question to those persons who served on the jury. The question that was entirely disallowed by the trial court was as follows:
 "Q: Even though I'm the one that actually struck her, did you have Linda Benefield listed as one that you intended to strike?"