Willie Joe Heard was indicted for first degree sodomy in violation of § 13A-6-63, Code of Alabama 1975, attempted rape in violation of § 13A-4-2, Code of Alabama 1975, and second degree burglary in violation of § 13A-7-6, Code of Alabama 1975. He was found "guilty as charged in the indictment" and was sentenced to 30 years in prison for the sodomy conviction. He also received 10-year sentences for each of the other convictions, to run concurrently with the 30-year sentence. He raises four issues on appeal.
The record reveals that on June 28, 1989, B.L. arrived home between 3:00 p.m. and 4:00 p.m. after doing some shopping. She lived alone. She took a shower between 6:30 p.m. and 7:00 p.m. While she was in the shower, she heard something fall. She then heard another noise and heard someone walking around the house. She turned the shower off, pulled the curtain back, and saw the appellant standing in the hallway outside of the bathroom. She jumped out of the shower and hollered at the appellant to get out of the house. She ran from the bathroom and reached the dining room door, which opens to the outside. The appellant grabbed her and pulled her away from the door. She fought with him. She was able to grab the telephone and tried call for help. The appellant attempted to grab the telephone away from her. They continued to fight until they reached an armless lounge chair. The appellant pushed her onto the chair. He got on the floor and leaned over her. The appellant held her legs down with his right hand and grabbed her breasts with his left hand. He also kissed her on the vagina. B.L. still had the telephone in her hand and started hitting the appellant on the head with it. She continued to scream. B.L. hit him approximately 15 to 20 times. B.L. was able to get away from the appellant when he reached up and grabbed his head.
B.L. ran to the door. The appellant was behind her and tried to pull her back into the house. She got to the door and ran out on the porch. She stood on the porch and screamed for help. She thought she saw the appellant walking near the end of the street. She then went back into the house and called the police. She identified the appellant as her assailant a short time later when the police brought him to her house.
Deputy John Walters of the Tallapoosa County Sheriff's Department received a call about a break-in and proceeded to the location. On the way to the scene he saw a man who fit the description of the assailant. He asked the appellant his name and *Page 558 
where he was going. The appellant told him he was going home. He told the appellant he would give him a ride home. Walters was near the area where the appellant lived. Walters then found B.L.'s house and told the appellant to stay in the car. After Walters walked up to the house, he heard the car door open and he saw the appellant jump out of the car and run down the street. The appellant was then apprehended by Deputy Steve Freeman, who was also at the scene. Freeman brought the appellant back to B.L.'s house, and she identified him as the assailant.
Walters conducted an investigation at the scene. He found a window screen leaning against the back of the house to the left of the back bedroom window. There were scuff marks on the wall adjacent to the window as if someone had tried to climb the wall. He also found a pack of Pyramid cigarettes and a cigarette lighter in the living room where the chair on which the alleged assault took place was located. He found a button under the chair. Tellis Hudson of the Alabama Department of Forensic Sciences testified that a fingerprint taken from the screen matched the appellant's right thumb print. He also testified that the button found under the chair was of the same size and type as the buttons on the shirt worn by the appellant when he was picked up by the police immediately after the incident. He further testified that there were two buttons missing from the appellant's shirt.
A statement made by the appellant at 9:50 p.m. on the night of the incident and a statement made by the appellant at 3:30 p.m. the next day were both admitted into evidence. Both statements incriminated the appellant. He admitted going into B.L.'s house and stated that he had made a mistake.
The appellant pleaded not guilty and not guilty by reason of mental disease or defect. He based his defense on the latter plea. Numerous witnesses testified concerning strange behavior exhibited by the appellant. The chief of police for the City of Dadeville testified that the appellant at one time lived on a green couch on the side of the road. He further testified that within two or three months of the alleged crime, he had received a report that the appellant was lying partially out in the street under a red light. On cross-examination, he stated that several of the reports he had received concerned the appellant's being intoxicated. Other witnesses testified to the following: that the appellant would sometimes pull his pants off; that he would laugh to himself and talk to himself; that the appellant would sit on the porch while he was naked; and that the appellant would sit in the middle of the highway. On cross-examination, the appellant's aunt testified that she called the Department of Human Resources several times about the appellant's abusing alcohol.
The Tallapoosa County Probate Judge testified that the appellant was involuntarily committed in civil commitment proceedings in February 1984 and again in February 1986. It is unclear from the record whether he was also committed in October 1986. On cross-examination, the probate judge testified that the appellant was determined not to be mentally ill during a hearing held five days prior to the alleged crime.
Dr. James Hooper, the chief psychiatrist at Taylor Hardin Secure Medical Facility, examined the appellant approximately 13 months after the incident. He testified that it was his opinion that the appellant was psychotic at the time of the incident and that he was actively suffering from schizophrenia at that time. He further testified that he did not believe that the appellant was able to understand the criminal nature of his behavior at the time of the incident. On cross-examination, Dr. Hooper stated that people like the defendant, who had been involved in commitment proceedings, would be familiar with the behavior of schizophrenics. He further testified that his opinion was based on his belief that the appellant was telling the truth. It was brought out on redirect examination that a Department of Human Resources caseworker made a home visit to the appellant on May 23, 1989, and that the caseworker determined that the appellant had *Page 559 
been drinking, but that he was not psychotic.
 I
The appellant first contends that the trial court erred in denying his motions for directed verdict and judgment notwithstanding the verdict as to the attempted rape charge, because there was insufficient evidence to support a conviction for attempted rape. He specifically argues that he was fully dressed during the incident and that his actions did not indicate that he intended to rape B.L. We disagree.
"A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense." Ala. Code 1975, §13A-4-2(a). "A male commits the crime of rape in the first degree if he engages in sexual intercourse with a female by forcible compulsion." Ala. Code 1975, § 13A-6-61(a)(1).
We find that the testimony of the victim alone was sufficient to support the conviction. The appellant pushed B.L. onto a chair. He held her breasts and kissed her vagina. Furthermore, this all occurred while B.L. was naked. This evidence clearly supports the existence of the required overt act. See, e.g.,Williams v. State, 445 So.2d 949 (Ala.Crim.App. 1983). We also find that the evidence showed the existence of the required intent. Intent may be proved by the words and acts of the accused and may be inferred from all of the surrounding circumstances. Hinds v. State, 423 So.2d 1382
(Ala.Crim.App. 1982). The question of intent at the time of the commission of the crime is normally an issue for the jury to resolve.Rowell v. State, 570 So.2d 848 (Ala.Crim.App. 1990); Austin v.State, 555 So.2d 324 (Ala.Crim.App. 1989). We find that the jury could properly find the existence of the required intent from the appellant's actions at the time of the offense. See,e.g., Williams; Cogman v. State, 424 So.2d 1355
(Ala.Crim.App. 1982). Thus, the trial court properly denied the appellant's motions for acquittal and judgment notwithstanding the verdict.
 II
The appellant contends that the State exercised its peremptory strikes in a racially discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986). The record reveals that the State exercised its peremptory strikes to remove 15 black citizens from the jury panel. The record does not reflect how many peremptory strikes were available to the State. Three black citizens served on the jury. After the trial court found that the appellant had established a prima facie case of racial discrimination, the State put forth the following reasons for striking the black citizens:
1. R.F. — lived close to the appellant; was the appellant's neighbor; had worthless check convictions.
2. C.M. — stated on voir dire that her husband had pending drug charges against him and that he was the defendant in a burglary and theft conviction during the last term of court.
3. S.S. — acknowledged that she was the sister of R.J. who had been personally prosecuted by the assistant district attorney prosecuting the appellant's case.
4. L.V. — admitted that he was the brother of A.V. who had been personally prosecuted by the assistant district attorney prosecuting the appellant's case. A.V. fled the jurisdiction.
5. L.G. — assistant district attorney trying the appellant's case and the district attorney's investigator were personally involved in numerous prosecutions of her father.
6. L.B. — went to school with and played basketball with the appellant; prosecuted for reckless endangerment.
7. R.E. — was convicted of driving while his license had been revoked in Camp Hill by the assistant district attorney prosecuting the case against the appellant when the district attorney was serving as city judge.
8. S.H. — served on a jury that acquitted a defendant in a rape case despite overwhelming *Page 560 
evidence against him and the present case involved a sexual offense.
9. James H. — testified as a witness for a defendant in a murder trial in which the defendant was acquitted.
10. C.T. — currently being prosecuted by assistant district attorney's wife (also a member of the district attorney's staff) for child support.
11. P.J. — went to school with appellant; mother was convicted of embezzlement in federal court after an investigation which began in state court in which the assistant district attorney was involved.
12. M.P. — had information from law enforcement that this juror and possibly other family members were involved in drug trafficking.
13. Jo H. — had pending child support case being handled by assistant district attorney's wife in which they were unable to collect through all means possible; assistant district attorney believed that juror might feel that case was not handled properly.
14. E.M. — had at least one DUI case and several other cases pending against him.
15. G.B. — was prosecuted for changing his identity in a related forgery charge and had pending worthless check cases against him.
In response to a question by the appellant's attorney, the assistant district attorney stated that, to his knowledge, none of the jurors left on the panel had DUI convictions. At the conclusion of the State's strikes, the appellant's attorney stated, "I would just like to file a blanket objection to the various reasons given by the District Attorney for the record." (R. 53.) The appellant did not present any evidence that the reasons given were based on sham or pretext. The trial court found that the jurors were struck for race-neutral reasons. We agree.
The principles of Batson, as interpreted by the Alabama Supreme Court, are set out in Ex parte Branch, 526 So.2d 609
(Ala. 1987), and are clarified in Harrell v. State,555 So.2d 263 (Ala. 1989). When applying the principles of Batson andBranch to the facts of this case, we find that those principles are satisfied.
A connection with or a founded suspicion of criminal activity can constitute a sufficiently race-neutral reason for the exercise of a peremptory strike. Stephens v. State,580 So.2d 11 (Ala.Crim.App. 1990); aff'd, 580 So.2d 26 (Ala. 1991);Powell v. State, 548 So.2d 590 (Ala.Crim.App. 1988), aff'd onother grounds, 548 So.2d 605 (Ala. 1989); Lynn v. State,543 So.2d 704 (Ala. 1987), aff'd, 543 So.2d 709 (1988), cert.denied, 493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989). This connection with or suspicion of criminal activity includes the juror in question, as well as close relatives and friends of the juror. Stephens; Allen v. State, 555 So.2d 1185
(Ala.Crim.App. 1989); Lynn. Thus, the district attorney's use of his peremptory strikes to remove R.F., C.M., S.S., L.V., L.G., L.B., R.E., P.J., M.P., E.M., and G.B. was proper.
The fact that child support proceedings have been brought against a juror or someone closely connected with a juror has also been held to be a race-neutral reason. Stephens; Lynn;Currin v. State, 535 So.2d 221 (Ala.Crim.App.), cert. denied,535 So.2d 225 (Ala. 1988). Thus, the removal of C.T. was also proper.
The fact that a juror previously served on a jury in which a defendant was acquitted has also been held to be a race-neutral reason. Watkins v. State, 551 So.2d 421 (Ala.Crim.App. 1988). Thus, the district attorney's removal of S.H. was proper. We also find that the removal of James H., who previously testified on behalf of a defendant who was acquitted, was based on considerations other than race. See, generally, Watkins;Powell. We also find that the district attorney's removal of Jo H., who was unsuccessful in collecting child support through the district attorney's office, was also based on considerations other than race. See, generally, Stephens
(hostile attitude toward law enforcement or dissatisfaction with police may be sufficiently race-neutral explanation for peremptory challenge); Powell (same). *Page 561 
In United States v. Grandison, 885 F.2d 143, 147 (4th Cir. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 2178,109 L.Ed.2d 507 (1990), the court observed, "Although the presence of minorities on the jury does not mean that a Batson prima facie case cannot be made . . . the fact that the jury included two black jurors is significant." Three black citizens served on the jury which convicted the appellant. After the State provided its reasons for exercising its peremptory strikes, the appellant did not present any evidence that those reasons were based on sham or pretext or that other venirepersons having the same characteristics were not challenged. See Baker v. State,555 So.2d 273 (Ala.Crim.App. 1989). The appellate courts of this state give the decision of the trial court "great deference." Batson; Allen. The trial court is in a better position than the appellate court to distinguish bona fide reasons from sham excuses. Allen. We find that the trial court's decision was not clearly erroneous. See Branch.
 III
The appellant next contends that the trial court erred in sustaining the State's objections to questions asked of Dr. Hooper concerning the percentage of felons at Taylor Hardin Secure Medical Facility found competent to stand trial and competent at the time of the offense. The appellant failed to preserve this issue for review because he failed to make an offer of proof. "In order to review a ruling sustaining an objection to a question which does not on its face show what is the expected answer, attention must be called to the proposed answer and it must be shown that such answer was relevant and admissible." Bracewell v. State, 506 So.2d 354, 357
(Ala.Crim.App. 1986). See also Freeman v. State, 453 So.2d 776
(Ala.Crim.App. 1984). Following the court's ruling on the objection, defense counsel should have made an offer of proof as to what the witness was expected to answer and stated the reason the evidence should have been admitted. Because defense counsel failed to do this, there is nothing before this court on which we could predicate error.
 IV
The appellant next contends that the trial court erred to reversal in failing to give him the opportunity to present evidence during the voir dire hearing on his motion to suppress his statements. The record reveals that during the suppression hearing, which was held out of the jury's presence, the State presented evidence that the statements made by the appellant were voluntarily, knowingly, and intelligently made. The appellant then stated that he wanted to have Dr. Hooper testify as to the appellant's ability to knowingly and intelligently waive his rights and to make a statement. The trial court denied this request and stated that the proper time to put on such testimony was during the appellant's case-in-chief, and that such testimony went to credibility. The trial court's failure to allow this testimony was error.
Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), requires a knowing and intelligent waiver of the accused's right to remain silent. An accused must be able to understand his right to remain silent and his right to an attorney before he can waive such rights. Miranda. The reason for holding a hearing outside of the jury's presence is so the jury will not be prejudiced by hearing evidence that is subsequently held inadmissible. See, generally, Jones v. State,407 So.2d 870 (Ala.Crim.App. 1981). Before an accused's confession or statement is admitted into evidence, the trial court should hear any testimony offered by the accused that the statement was not voluntarily, knowingly, and intelligently made, and the accused should be given the opportunity to cross-examine the State's witnesses and present testimony out of the presence of the jury. White v. State, 260 Ala. 328,70 So.2d 624 (1954); Jackson v. State, 83 Ala. 76, 3 So. 847
(1888); Taylor v. State, 42 Ala. App. 634, 174 So.2d 795 (1965) (trial court's ruling during voir dire hearing held in jury's absence that defendant was not entitled to call witnesses and that such witnesses were a part of the defendant's case-in-chief was error). See also Lloyd v. *Page 562 State, 293 Ala. 410, 304 So.2d 235 (1974); Smith v. State,554 So.2d 449 (Ala.Crim.App. 1988), rev'd in part, 554 So.2d 451
(Ala. 1989); Theile v. State, 44 Ala. App. 375, 209 So.2d 854
(1968).
Although we find that the trial court erred in failing to allow the appellant to offer testimony during the voir dire hearing, we do not agree that the appellant is entitled to a new trial. Instead, we find that the appellant is entitled to a post-trial evidentiary hearing to determine whether the confession was voluntarily made pursuant to the requirements ofMiranda. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774,12 L.Ed.2d 908 (1964); Smith v. State, 554 So.2d 451 (Ala. 1989). If, at the close of the hearing, the trial court concludes that the statements were voluntarily made, admissible into evidence, and properly considered by the jury, there is no constitutional necessity for a new trial, and the conviction is due to be affirmed. See Jackson v. Denno; Smith. If the trial court, however, determines that the confession was not voluntary, the appellant is entitled to a new trial. Id. Thus, we remand the case to the trial court for a post-trial hearing to determine the voluntariness and, thus, the admissibility of the statements. Due return is to be made to this Court within 60 days.
We note that the appellant primarily relied on his defense of mental disease or defect and that he states in brief that he does not dispute the facts of the case. We cannot deem the admission of the incriminating statements to be harmless error, however, because the State contended during the trial that the appellant's ability to give the statements indicated that he was not suffering from a mental disease or defect at the time of the incident.
The appellant shall be present with counsel at the hearing. The return to this court shall include all testimony presented, together with the written findings of fact by the trial judge.
REMANDED WITH DIRECTIONS FOR HEARING.
All the Judges concur. *Page 791