Mose Bell, Jr., sued Ray Lowery, alleging that Lowery had negligently maintained certain premises owned by him and that as a result of the negligent maintenance Bell's 14-year-old son Kerry Bell had drowned in a lake on those premises. He contends that because Lowery had failed to enclose the property with a fence, and because Lowery knew that children and adults fished and swam in the 17-acre lake, he had negligently failed to prevent persons from trespassing onto his property. Kerry Bell and several of his friends were swimming in the lake when Kerry drowned. Bell appeals from a judgment based on a jury verdict awarding him $15,000.
Initially, Bell argues that the trial court erred in refusing to quash the jury panel following his challenge of the defendant's use of peremptory strikes. The trial court determined that, because the defendant had stricken five of the six blacks on the jury venire, Bell had made a prima facie case of discrimination. Upon the plaintiff's showing of a prima facie case of discrimination, the burden shifted to the defendant to provide race-neutral reasons for his strikes of the five blacks. See Ex parte Bird, 594 So.2d 676, 680 (Ala. 1991), citing Ex parte Branch, 526 So.2d 609 (Ala. 1987);Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).
The record does not contain the initial questions propounded to the jury venire by the parties and, therefore, this Court has before it very little on which to review the claim of discrimination. Only the hearing following the Batson challenge is in the record before this Court. That hearing, at which the defendant offered the following reasons for his strikes, covered five pages of the record:
 "[Defendant's attorney]: Judge, we did have race-neutral reasons for each of the strikes. Let's just take them in the same order [the plaintiff's attorney] used. I would point out that we had nine strikes, and we took five blacks and four whites of those nine. Our first strike was a white. He made a comment about No. 75. The reason I struck him was that he was familiar with this McDaniel Arms area where it happened. Some of the other jurors said they had driven along Highway 82 and didn't know anything about the lake. This is the only juror on the jury venire that was familiar with McDaniel Arms, from my notes.
 "[Plaintiff's attorney]: Which number are you talking about?
"[Defendant's attorney]: No. 75.
". . . .
 "[Defendant's attorney]: The second one was No. 24. He makes a good impression. The reason I struck him is that he works with children. He's a schoolteacher. He is the only schoolteacher on there, and he's the only one that I made a note that actually worked with children on a daily basis. He teaches school and here we have a school kid that was killed.
 "The third one was Juror No. 68, B. W. It's true that she's a supervisor at Bryce, but that's not the reason we struck her. She has had two close relatives — I asked if you had a close friend or close relative that has been killed as a child. She had both a neighbor and a nephew that were killed as children. This case involves the death of a fourteen-year-old, and that is the reason we struck her.
 "The next one was Juror No. 58, C. S. The reason we struck him was that he works at B.F. Goodrich with the plaintiff and where the plaintiff's current wife works. He is a prior plaintiff in a lawsuit. It was not just a car wreck but was a case that involved a shooting.
 "Juror No. 53 is L.R. We struck him because he wasn't paying attention. He was on the second row there and he was sullen and he was bored and not paying attention. This is a drowning case, and this man works at the Yacht Club where *Page 1382 
they do have swimming pools. The primary reason was that he was just looking up at the ceiling and not paying attention. I call it sullen. That's the reason.
". . . .
 "THE COURT: [Defendant's attorney], let me hear from you further, then, on Juror No. 75, D.Y., the juror for which your explanation was he was familiar with McDaniel Arms. [Plaintiff's attorney] says that his recollection is that he stated he may have driven by or seen it but he wasn't familiar with it as such. What is your recollection or your impression about his degree of familiarity.
 "[Defendant's attorney]: My note was — and I'm not saying it's verbatim, but the note that I made at the time was that he was familiar with McDaniel Arms. It's not just somebody that drives along Highway 82. McDaniel Arms is where these boys on the bicycles —
 "THE COURT: Let the record reflect that you are showing me an aerial photo of the area now and pointing with your finger.
 "[Defendant's attorney]: Right. And from the right side of the photograph the five boys on bicycles went on Highway 82, cut on a side road and then cut through McDaniel Arms and then got on through a little path and then got over on Ray Lowery's property. I mean it's not just driving along knowing where McDaniel Arms is. McDaniel Arms is involved in this because you had to cut through McDaniel Arms on a bicycle. The decedent, Kerry Bell, did it the day that he drowned on a Sunday. He did it on that Saturday and Friday preceding his drowning, this same route. It's cutting through McDaniel Arms."
(R. 10-14.)
This Court has written regarding Batson challenges to peremptory strikes:
 "[I]n evaluating the evidence and explanations presented by [a party] for the use of its peremptory challenges, the trial court must determine whether the explanations are sufficient to overcome the presumption of bias."
Ex parte Thomas, 601 So.2d 56, 58 (Ala. 1992). (Citations omitted.)
We have reviewed the record very carefully and, although the question may be a close one, based on the limited record before us we must defer to the trial judge's ruling. We conclude that his refusal to quash the jury panel was not clearly erroneous. See Ex parte Lynn, 543 So.2d 709, 712 (Ala. 1988).
As to Bell's second contention — that the trial court erred in instructing the jury with regard to contributory negligence on the part of Kerry Bell — we find that any error, if any, was harmless. The jury returned a verdict for the plaintiff. Thus, the jury determined that Kerry Bell had not been contributorily negligent.
AFFIRMED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur.