Donald Eugene Smith was convicted of manslaughter by a Calhoun County jury and was sentenced to seven years' imprisonment in the penitentiary.
Smith was charged with vehicular homicide when the automobile he was driving struck and killed a pedestrian. The state's evidence tended to show that Smith's car left the roadway to the right, crossed an emergency stopping lane, and travelled onto the grassy shoulder of the road, where it hit 14-year-old Michael Summers. *Page 639 
After the impact, the shouts of Summers' companion, Donald Hodge, brought several neighbors to the scene. Smith returned to the scene in his car, got out, and, according to eyewitnesses, appeared to be unsteady afoot as he came around the car. He looked at Summers' body lying at the bottom of a ditch and asked if he was dead. He also examined the front of his car where there was damage from the impact. Smith then told witnesses that he was going to get an ambulance and the police. One witness walked around behind his car to write down his tag number, but the appellant turned off all his lights and drove off. He turned on his lights only after the vehicle was far enough away that the witness could not see the tag number.
The pathologist, Dr. Aguilar, testified that the impact on the deceased was so great that his head was connected to his body only by the skin of the neck. The decedent's urine revealed the presence of cannabinion, which is a residue of marijuana and proves that the person recently had marijuana in his system. Aguilar testified the presence of marijuana in the boy's urine would not have affected his equilibrium on that night because, once in the urine, it was a waste product.
A licensed practical nurse, Sarah Avery, was visiting a friend who lived close to the scene. They heard a loud thump and a boy screaming for help. Miss Avery stated that when she reached the scene of the accident, Donald Hodge showed her where Michael Summer's body was lying in the ditch. She checked for a pulse but found none. Miss Avery also testified that when the appellant returned to the scene that his speech was slurred.
The ambulance and police were, in fact, called by the Gentrys, who lived near the scene of the impact. The hood and headlight of the appellant's car were damaged and there was a sock hanging from the bumper. Mrs. Gentry testified that she smelled the odor of alcohol on the man's breath and identified the appellant as the driver of the automobile. Mr. Gentry also smelled alcohol on the man and observed that he was not walking straight and had to hold onto the side of the car.
The appellant, a former police officer with 10 years' experience on the force, called Sheriff Roy Snead of Calhoun County and asked him to come to where he was. Upon Snead's arrival, he observed that the appellant was drinking and was intoxicated. The appellant then began to volunteer some statements.
Appellant took the stand and testified that during the past year he had taken numerous prescription drugs for anxiety and depression, including Ativan, Serax, Valium, and Halcyon. He also took medication for gout. He stated that on the day he hit Summers, he had had two beers and was taking gout medication. He claimed that upon returning to his sister's house after striking the youth, he drank several beers and took some Halcyon. Sheriff Snead testified that the appellant was coherent and made a spontaneous, voluntary statement to him regarding the incident, including saying that he left because somebody had gotten after him with a hatchet. The sheriff did not attempt to take any statement from the appellant, had not placed him under arrest and did not write anything down. The sheriff stated, however, that he would not have allowed the appellant to drive an automobile because of his condition.
After the verdict and sentence, a motion for new trial was filed and a hearing held. A witness offered by the defendant testified that she saw the deceased and Donald Hodge smoking marijuana on the day of the death. Another witness was offered who stated that on the night of the collision, a boy of 13 or 14 ran out in front of his motorcycle on this highway, and that he also saw another boy of about the same age standing on the median. The state countered with a witness who testified that she had seen both youths on the day of Michael's death. She stated that they did not smoke marijuana in her presence and she felt she would have known it if they had been smoking it previously. The motion for new trial was denied. *Page 640 
 I
At trial appellant denied saying that someone at the scene had gotten after him with a hatchet. Thereafter, the sheriff testified that the appellant did make that statement. We conclude from the facts of the case that there never arose an obligation to administer the Miranda warnings to the appellant, before his remark to Sheriff Snead. The Miranda warnings must be given before there is a custodial interrogation, initiated by law enforcement officers, after the person has been taken into custody or otherwise deprived of his freedom of action in any significant way. A voluntary spontaneous statement made by an accused to police officers before any questions have been asked is admissible against the accused even though he has not been advised of his Miranda rights. Johnston v. State,455 So.2d 152 (Ala.Cr.App. 1984). Statements secured in violation of an accused's Miranda rights may be admissible for impeachment purposes. Coon v. State, 432 So.2d 558 (Ala.Cr.App. 1983); Whetstone v. State, 435 So.2d 226 (Ala.Cr.App. 1983). We conclude that no error was committed with respect to this statement made by Smith to the sheriff, whom he had called and asked to come to his residence.
 II
The trial court, in charging the jury, read to them §32-5A-191, Code of Alabama 1975, relating to operating a motor vehicle while under the influence of either alcohol or a controlled substance, or the combination of the two. Appellant contends that there was no evidence that the appellant had ingested any of the said items before striking Summers. He contends that his condition at the time the sheriff arrived was a result of the beer and Halcyon ingested after he ran into the pedestrian. There was evidence from the testimony of two witnesses, however, that Smith smelled of alcohol when he reappeared on the scene shortly after striking Summers. There was, in addition, evidence that he did admit to taking the gout medication on the day of the accident. We believe the court would have been in error had it not given a charge on the subject of operating a motor vehicle while under the influence of alcohol or controlled substances.
 III
The appellant contends that the court erred in denying his motion for new trial. The evidence as mentioned above was directed to the appellant's scenario that the victim darted into the roadway into the path of the oncoming car and that the victim himself might have been under the influence of a controlled substance. The contention of the appellant was that he never veered from his lane on the roadway, either before or after he struck the victim. The physical evidence, however, was clear that the vehicle had left the roadway, crossed the emergency stopping lane and had been on the grassy shoulder of the road. The testimony of the eyewitness was to the same effect. That the victim had ingested some marijuana was already in evidence from the testimony of Dr. Aguilar of the Department of Forensic Sciences, so that element of testimony would have been cumulative only.
The trial judge carries the duty of assessing the believability of the testimony. Whether to grant or deny a motion for new trial necessarily rests within his sound discretion. In the absence of an abuse of that discretion, it will not be disturbed. Smiley v. State, 435 So.2d 202
(Ala.Cr.App. 1983); Perry v. State, 455 So.2d 999 (Ala.Cr.App. 1984).
In view of the foregoing, this case is due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 641