The appellee, Terry Allen Smith, was convicted of manslaughter by a Houston County jury. The Court of Criminal Appeals reversed the conviction and remanded for a new trial.554 So.2d 449. This Court granted the writ of certiorari on petition by the State. We affirm in part, reverse in part, and remand with instructions.
The issue is whether a defendant in a criminal case is entitled to a hearing, outside the presence of the jury, to determine the admissibility of his extrajudicial statements that were heard by a law enforcement officer in a non-custodial setting.
The jury found Smith guilty of manslaughter by recklessly operating a vehicle and, thereby, causing the death of the passenger in the car, Ricky Armstrong. Smith was sentenced to eight years in the penitentiary.
Smith and Armstrong were together on the night of May 23, 1986. The two were intoxicated; they left a friend's house to go to Cottonwood, Alabama, to get some cigarettes. On the return trip, their automobile left the highway and crashed, killing Armstrong and inflicting cuts, bruises, and a concussion upon Smith. At the accident scene, the paramedics treating Smith asked him who had been driving the car. Smith told the paramedics that he had been driving the car and that he remembered the accident. The paramedics testified that they did not threaten, beat, or coerce Smith into talking to them. Smith appeared coherent to the paramedics. Officer Grady Tew was the first state trooper to arrive at the accident scene. Officer Tew overheard Smith telling the paramedics that he was driving the car. Smith did not make this statement in response to a question asked him by any law enforcement officer at the accident scene. Smith was taken to the hospital for further treatment. At the hospital, Corporal Charles Dukes, of the Alabama State Troopers, read Smith his Miranda rights. Smith indicated that he understood his rights, and he told Corporal Dukes that he was driving the car when it wrecked. He also admitted that he had been drinking and agreed to a blood-alcohol test, which registered 0.12%. Corporal Dukes did not coerce Smith to talk to him, nor did he offer a reward or inducement to do so. Both the troopers and the paramedics testified at trial as to Smith's statements.
At trial, Smith objected to the admissibility of his statements and requested a hearing on their admissibility. The trial court allowed both state troopers to testify as to Smith's statements, without conducting a hearing outside the presence of the jury. Smith made no objection to the testimony of the paramedics. Smith also questioned the voluntariness of his statements, by calling the emergency room doctor to testify. The doctor said Smith had a concussion and was groggy while at the hospital. He further testified that during the examination, which occurred only minutes after the accident, Smith was unable to remember anything about the accident. Smith testified that he was not driving the car at the time of the accident and that he remembered nothing from the time the car started to *Page 453 
swerve until the next morning, except walking into the hospital. The trial court denied his motion to suppress the admissions, without a hearing. The jury found Smith guilty.
The Court of Criminal Appeals held that the trial court erred in not holding a hearing outside the presence of the jury to determine the admissibility of these extrajudicial statements. We agree that Smith is entitled to a hearing; however, we do not agree that Smith is entitled to a new trial.
The Court of Criminal Appeals' opinion relies primarily onJackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908
(1964). In Jackson, the United States Supreme Court held that, "A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." Id. at 380, 84 S.Ct. at 1783.
In Jackson, the defendant's statements or admissions of guilt were extracted by the assistant district attorney, at a hospital, while the defendant was awaiting emergency surgery for gunshot wounds he received in a shoot-out with a police officer, whom he was suspected of murdering. The statements were made as a result of interrogation in a custodial setting, in the presence of police officers, and were recorded by a stenographer. The defendant had also been given 50 milligrams of Demerol immediately before the assistant district attorney began the interrogation. At trial, the defendant's statements, or admissions of guilt, were admitted into evidence without a hearing outside the presence of the jury to determine whether the statements were made voluntarily. The defendant took the stand in his own defense and testified that he had been pressured into answering questions. The trial court submitted the question about the voluntariness of the confession to the jury, with the other issues in the case. "The jury was told [in accordance with the New York procedure] that if it found the confession involuntary, it was to disregard it entirely, and determine guilt or innocence solely from the other evidence in the case; alternatively, if it found the confession voluntary, it was to determine its truth or reliability and afford it weight accordingly." The jury found the defendant guilty.Jackson, supra, at 371-75, 84 S.Ct. at 1777-80. The United States Supreme Court held that the defendant was entitled to a post-trial evidentiary hearing to determine whether the confession was voluntary, rather than a new trial. The Court stated:
 "It is New York, therefore, not the federal habeas corpus court, which should first provide Jackson with that which he has not yet had and to which he is constitutionally entitled — an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession. It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the issue of guilt or innocence. Jackson's position before the District Court, and here, is that the issue of his confession should not have been decided by the convicting jury but should have been determined in a proceeding separate and apart from the body trying guilt or innocence. So far we agree and hold that he is now entitled to such a hearing in the state court. But if at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that Jackson's confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for Jackson has already been tried by a jury with the confession placed before it and has been found guilty. True, the jury in the first trial was permitted to deal with the issue of voluntariness and we do not know whether the conviction rested upon the confession; but if it did, there is no constitutional prejudice to Jackson from the New York procedure if the confession is now properly found to be voluntary and therefore admissible. If the jury relied upon it, it was entitled to do so. Of course, if the state court, at an evidentiary hearing, redetermines the facts and decides that *Page 454 
Jackson's confession was involuntary, there must be a new trial on guilt or innocence without the confession's being admitted in evidence."
Jackson, supra, at 393-94, 84 S.Ct. at 1790.
Jackson is the controlling authority on the issue before this Court. Therefore, we affirm the judgment of the Court of Criminal Appeals insofar as it holds that Smith is entitled to a hearing; however, we reverse it insofar as it grants a new trial; and we remand the case to the Court of Criminal Appeals, with instructions to remand for a post-trial Jackson hearing to determine whether the statements were voluntary.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.