836 So.2d 973 (2001)
Ex parte Shonelle JACKSON.
(In re Shonelle Jackson v. State).
1981723.
Supreme Court of Alabama.
May 18, 2001.
Bryan A. Stevenson and Randall S. Susskind of Equal Justice Initiative of Alabama, Montgomery, for petitioner.
Bill Pryor, atty. gen., and Kathryn D. Anderson, asst. atty. gen., for respondent.
PER CURIAM.
Shonelle Jackson was convicted of murder made capital because it occurred during the commission of a robbery in the first degree, see § 13A-5-40(a)(2), Ala. Code 1975, and first-degree theft of property, see § 13A-8-3, Ala.Code 1975. The jury recommended, on the capital conviction, a sentence of life imprisonment without the possibility of parole, by a vote of 12-0; the trial court overrode that recommendation and sentenced Jackson to death. Jackson was also sentenced, as a habitual offender with three prior felony convictions, see § 13A-5-9(c)(2), Ala.Code 1975, to life imprisonment for the theft conviction. The Court of Criminal Appeals affirmed both convictions and sentences. See Jackson v. State, 836 So.2d 915 (Ala.Crim.App.1999), for a detailed statement of the facts. We granted certiorari review; see Rule 39(c), Ala.R.App.P.
*974 Jackson contends that the trial court erred by not conducting a hearing outside the presence of the jury on his motion to suppress his statement made to the police.
Initially, we note that the Court of Criminal Appeals conducted a plain-error review of this issue, stating: "Although [Jackson] requested a hearing in his written motion, he did not subsequently object when the trial court denied the motion without conducting a hearing." 836 So.2d at 934. The record indicates that on January 30, 1998, Jackson filed a pretrial motion to suppress his statement made to a law-enforcement officer. On February 2, 1998, the trial court denied the motion, by entering the following order on the first page of the motion: "Ordered, motion denied without a hearing." (C.R. 49.) At trial, Jackson entered two objections to the admission of his statement, one of them specifically referencing the pretrial motion to suppress. The trial court overruled Jackson's objections and admitted the statement. The specificity of the trial court's order denying Jackson's motion to suppress his statement indicates that the trial court was aware of Jackson's request for a hearing and that the trial court's determination was final. Jackson suffered an adverse ruling; therefore, the error is preserved for review. Cf. Ex parte Rowell, 666 So.2d 823 (Ala.1992)(holding that a ruling on a pretrial motion to suppress is sufficient to preserve the issue for review and that the defendant need not object to the evidence when it is admitted).
In Duncan v. State, 278 Ala. 145, 165, 176 So.2d 840, 859 (1965), this Court stated, "We are clear to the conclusion that whenever a motion is made for the question of the voluntariness of the confession to be determined outside the presence of the jury, the motion should be granted." See also Smith v. State, 554 So.2d 451 (Ala.1989), and Felder v. State, 470 So.2d 1321, 1326 (Ala.Crim.App.1984)(holding that "an accused is entitled to a hearing on the voluntariness of his confession").
The record indicates that Jackson moved to suppress his statement made to a law-enforcement officer, stating in his motion:
"1. The defendant, Shonell[e] Andre Jackson, was taken into custody and interrogated on April 29, 1997, according to police records, in connection with his alleged participation in the April 25, 1997, shooting of [Lefrick] R. Moore.
"2. He was questioned, which questioning was recorded, by Detective A.J. Signore, Montgomery, Alabama Police Department.
"3. Mr. Signore informed the defendant that his fingerprints had been found on a Dairy Queen cup in the automobile used in the robbery/killing of Mr. Moore.
"4. In fact no fingerprints were found.
"5. A preliminary hearing was held on this case on August 8, 1998, which was transcribed as per Court Order.
"6. The following exchange occurred on pages 17 and 18 of the transcript of that hearing:
"`Q. And his statement states that.... It says, Detective Signore then advised Mr. Jackson a Dairy Queen cup was found inside the vehicle, which the other three subjects were in and asked how his fingerprints got on the cup. Do you recall that statement?
"`A. I believe I may have made something... a statement similar to that, yes, sir.
"`Q. Did you, in fact, have forensics do a fingerprint analysis on a variety of this evidence?
"`A. Eventually, yes, we did.

*975 "`Q. And I have a latent print search here which indicates one Dairy Queen cup. It says GNP and the results are negative.
"`A. Yes, sir, that's correct.
"`Q. Is it my understanding that negative means there were no fingerprints on that cup?
"`A. Yes, sir. That's my information.
"`Q. Why did you tell Mr. Jackson that you had a cup with his fingerprints on it?
"`A. Because I was conducting an investigation.
"`Q. But that wasn't true, was it?
"`A. No, sir. At that time I didn't know it to be true, no.
"`Q. So it was a lie?
"`A. Yes, sir.
"`Q. Is that a standard investigative technique with the police department?
"`A. Well, it's kind of interesting, because more times than not, the defendants come down and lie to us, so we have to use every means available to get the truth from them and sometimes we have to bend the truth or work around the truth.'
". . . .
"7. Mr. Jackson cannot be said to have voluntarily answered questions or voluntarily made a statement; but was, instead coerced into responding to the police interrogation. [Citations omitted.] The circumstances around the interrogation were coercive and the police investigator lied to the defendant about the evidence they possessed. The totality of the circumstances [shows] that the statement was involuntary and taken in violation of federal and state constitutional guarantees.
". . . .
"WHEREFORE, the defendant, Shonell[e] Andre Jackson, respectfully requests this Honorable Court to:
"(a) allow the presentation of evidence and argument on this motion;
"(b) schedule a hearing on this motion;
"(c) suppress Mr. Jackson's statement in its entirety; and
"(d) grant any other relief that is just and proper under the circumstances."
(C.R.46-48.) The trial court denied the motion, without conducting a hearing.
Jackson requested a hearing to determine the admissibility of his statement, and the trial court denied him the opportunity to present evidence. Consequently, Jackson was deprived of his chance to testify about the circumstances relating to the voluntariness of his statement. If the trial court had conducted a hearing, Jackson could have testified and presented evidence indicating that the statement was not voluntarily made, without being subjected to cross-examination on other issues. Rule 104, Ala.R.Evid. If Jackson had testified in the hearing, conflicting evidence might have been presented to rebut the state's evidence of voluntariness. Therefore, in accordance with Duncan, Smith, and Felder, we hold that the trial court erred in determining the admissibility of Jackson's statement without conducting a hearing.
Jackson argues that in light of the United States Supreme Court's holding in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and this Court's holding in Smith, this error requires that the case be remanded for an evidentiary hearing. We agree.
In Jackson v. Denno, the defendant's statement was admitted into evidence without a hearing, outside the presence of the jury, to determine its admissibility. *976 The defendant testified at trial that his statement was coerced. The trial court permitted the jury to determine the voluntariness of the statement. The United States Supreme Court held that the defendant was entitled to a posttrial evidentiary hearing, rather than a new trial, to determine whether the confession was voluntary.
In Smith, the trial court admitted the defendant's statements made at the scene of the accident, without conducting a hearing outside the presence of the jury to determine their admissibility. The Court of Criminal Appeals held that the trial court erred in not conducting a hearing outside the presence of the jury and that the defendant was entitled to a new trial. This Court, however, applying the rationale in Jackson v. Denno, ordered that the case be remanded for a evidentiary hearing to determine the admissibility of the statements.
In accordance with Smith, we remand this case for a hearing to determine the admissibility of Jackson's statement. If, after the hearing, the trial court determines that Jackson's statement was voluntarily made and was properly admitted into evidence for the jury's consideration, a new trial is not required. See Jackson v. Denno, 378 U.S. at 393-94, 84 S.Ct. 1774 (stating that if the statement was properly admitted into evidence, "we see no constitutional necessity at that point for proceeding with a new trial, for [the defendant] has already been tried by a jury with the confession placed before it and has been found guilty"). However, if the trial court determines that Jackson's statement was not voluntary and therefore was not admissible into evidence, then there must be a new trial, at which the statement is not admitted into evidence.
This cause is remanded with instructions for the Court of Criminal Appeals to remand the case for a hearing in the trial court to determine the admissibility of Jackson's extrajudicial statement, in accordance with this opinion. After the trial court makes its return to the Court of Criminal Appeals, that court shall forward that return to this Court.
REMANDED WITH INSTRUCTIONS.
MOORE, C.J., and HOUSTON, LYONS, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
SEE, BROWN, and STUART, JJ., dissent.
STUART, Justice (dissenting).
In light of the facts in this particular case, I do not believe a remand for an evidentiary hearing is necessary to determine the admissibility of Jackson's statement.
In Duncan v. State, 278 Ala. 145, 176 So.2d 840 (1965), this Court stated:
"If there is no request expressly made by counsel for the defendant that the hearing on the issue of the voluntariness of the confession be heard in the absence of the jury, we think, nevertheless, that the trial court should on [its] own action require such a hearing to be held if there is to be any conflict in the testimony, and particularly when the defendant desires to take the stand...."
278 Ala. at 165, 176 So.2d at 859.
No evidence in the record before us contradicts the voluntariness of the statement received in evidence. The record reflects that Jackson, in his motion to suppress, requested a hearing on that motion, but he did not object, either before trial or when his statement was admitted into evidence, on the ground that a hearing on the matter was necessary to present additional evidence regarding voluntariness. Nor did *977 Jackson indicate in his motion or at trial that additional evidence was available or that he wished to testify on the question of the voluntariness of his statement. Jackson's motion to suppress is specific and presents only this legal question: whether a misrepresentation used by a law-enforcement officer makes a statement involuntary.
Alabama holds to the general rule that a confession is not inadmissible merely because it was induced by a trick or a misrepresentation that was not reasonably calculated to lead the accused to confess falsely. See Barbour v. State, 673 So.2d 461 (Ala.Crim.App.1994), aff'd, 673 So.2d 473 (Ala.1995), cert. denied, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996); Ex parte Hill, 557 So.2d 838, 841 (Ala. 1989) ("more subtle forms of psychological manipulation, such as trickery or deception by the police, have not been considered sufficiently coercive, standing alone, to render a confession or incriminating statement involuntary"); Fincher v. State, 211 Ala. 388, 100 So. 657 (1924); and Bates v. State, 549 So.2d 601 (Ala.Crim.App.1989). In Fincher, the Court stated:
"It is also declared by this court that if a confession was procured, not by menace, threat, or hope, but by the mere employment of falsehood on the part of officers or `other persons,' such falsehood `does not alone exclude it' (Curry v. State, 203 Ala. 239, 242, 82 South. 489; Burton v. State, 107 Ala. 108, 18 South. 284; Stone v. State, 105 Ala. 60, 69, 18 South. 114; Levison v. State, 54 Ala. 520, 525; King v. State, 40 Ala. 314; 1 Greenl. Ev., §§ 322, 323, 329); nor does the fact that a confession was obtained by artifice alone exclude it (Brindley v. State, 193 Ala. 43, 69 South. 536, Ann. Cas. 1916E, 177). It is only when such falsehood or artifice amounts to a promise of favor or threat of punishment. Where these have not been employed, the confession is admissible. Levison v. State, 54 Ala. 520, 525; 16 C.J., p. 729, § 1497."
211 Ala. at 393, 100 So. at 662; see, also, Charles W. Gamble, McElroy's Alabama Evidence, § 200.07(7) (5th ed.1996). Instead, the trial court must examine the totality of the circumstances surrounding the statement to determine its voluntariness. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Ex parte Matthews, 601 So.2d 52 (Ala.1992).
I have carefully reviewed the record to determine whether Jackson voluntarily and knowingly waived his Miranda rights before making the inculpatory statement to the police and whether the statement was voluntary. The record indicates that Jackson's statement was voluntary. The record reveals that Jackson, 18 years old at the time, voluntarily went to the Montgomery Police Department, on April 29, 1997, at 2:05 p.m. At 2:16 p.m., Detective Andrew Signore read Jackson his Miranda rights and Jackson signed a waiver form indicating that he understood his rights, that he had not been threatened or promised anything, and that he wished to talk to the police. Signore also signed the form, indicating that he had advised Jackson of his rights. Detective C.D. Phillips, Signore's partner at the time, signed the form as a witness.
Signore testified that Jackson initially denied having had any involvement with the three codefendants. Because he thought Jackson was not telling the truth, based on the statements of the codefendants, Signore told Jackson that his fingerprints were found on a Dairy Queen cup found in the stolen vehicle; in fact, he did not know if fingerprints had been found on the cup. Signore testified that after he told Jackson about the fingerprints, Jackson admitted that he had been with the *978 other defendants on the day of the crime.[1] After making that statement, Jackson asked if he could change his statement again. Signore testified that Jackson then admitted to having been with the other defendants at the time of the murder and to possessing a .380 automatic pistol.
After considering the totality of the circumstances surrounding Jackson's statement, I conclude that the State met its burden of proving that Jackson made his statement voluntarily after having made a voluntary and knowing waiver of his Miranda rights. The record does not indicate that Jackson was threatened or coerced into giving a statement. Neither the motion to suppress nor Jackson's objections at trial indicate that Jackson had additional evidence to present on this matter. Signore's misrepresentation alone did not render the statement involuntary. The weight and preponderance of the evidence support the trial court's denial of the motion to suppress.
Because Signore's misrepresentation was the sole ground upon which Jackson claimed that his statement was involuntary, and because my review of the record indicates that Signore's misrepresentation did not render the statement involuntary, I believe the trial court's error in not conducting a hearing was harmless. Rule 45, Ala.R.App.P. I do not believe that speculation and conjecture that Jackson might have wanted to testify, without his having made such a proffer to the trial court regarding additional conflicting evidence, supports a remand. Therefore, I respectfully dissent.
SEE and BROWN, JJ., concur.
NOTES
[1] This portion of Jackson's statement was taped.