Rel: May 3, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

_____

## CR-2023-0611

_____

## Colton Trent Ketchum

## v.

## State of Alabama

## Appeal from Mobile Circuit Court
## (CC-21-2979)

KELLUM, Judge.

The appellant, Colton Trent Ketchum, was convicted of manslaughter, see § 13A-6-3, Ala. Code 1975, for hitting Edward Louis Rivers, Jr., with a vehicle and causing his death. He was sentenced to 20

years in prison.[1]    Ketchum gave oral notice of appeal at his sentence hearing.

The State's evidence tended to show that in the early morning hours of March 2, 2021, a hunter discovered Rivers's body lying face down on a rural road.  The hunter testified that Rivers was moving one leg and was "making a moaning sound." (R. 101.)  The hunter telephoned emergency 911.  Rivers died later that day from his injuries.  The medical examiner testified that Rivers had numerous injuries to his body and that the injuries to his head were so extensive that his skull surface was visible and "brain material was herniating" from the wound.  (R. 236.)

Lauren Finney testified that in 2021 she was in a relationship with Ketchum and that on March 2 Ketchum telephoned her to come and pick him up because his vehicle had broken down.  (R. 137.)   Finney went to pick Ketchum up, and she got out of the driver's seat of her vehicle and went to the passenger's seat.  Finney said that she had taken "four Xanax

---

[1]Ketchum was indicted for murder, see § 13A-6-2, Ala. Code 1975, but was convicted of the lesser-included offense of manslaughter.

bars and two footballs and [she] couldn't sit up at that point."[2]  (R. 137.)

She testified:

>  "[Prosecutor]:  At that point, when did [Ketchum] get in the car?
>
>  "[Finney]: When I pulled up beside his aunt, Amanda Taylor's car, I pulled into the middle of the road and stopped there beside her and I got out and I said, 'I don't know where [Ketchum] is.  Like, where is [Ketchum]?  Wake him up.'  Because she told me he was asleep.  And I said, 'Well, you're going to have to make him drive,' and I got in my passenger seat and he got in the driver's seat after he was woken up.  He was asleep in the backseat of his aunt's car."

(R. 138.)  Ketchum drove to his aunt's house and Rivers asked them for a ride home.   During the drive, she said, Ketchum and Rivers argued over a gun that Rivers had that belonged to Ketchum.  When they arrived at Rivers's mother's house Ketchum told Rivers to go inside the house and get his gun.  Finney testified: "They just went to arguing again and [Rivers] just jumped out of the car and said, 'All right.  Today I'm fixing to raise you little boy.  I'm fixing to show you today.'"  (R. 141.)  She said that when Rivers made this statement, he was holding a metal bar.  Finney testified:

---

[2]Finney explained on cross-examination that a bar of Xanax was two milligrams and that a "football" was "normally one milligram of Xanax."  (R. 153.)

"[Prosecutor]: Where did [Rivers] go when he got out of the car?

"[Finney]: He came around the front of the headlight on the passenger's side coming to the driver's side to drag [Ketchum] out.

"[Prosecutor]: What -- How far did he get around the car?

"[Finney]: He got to my headlight, my passenger headlight.

"[Prosecutor]: And then what happened?

"[Finney]: [Ketchum] hit the gas.

"[Prosecutor]: Did [Ketchum] say anything?

"[Finney]: No, not at that point. No, he had pulled off.

"[Prosecutor]: Did [Rivers] disappear?

"[Finney]: Honestly, I don't remember [Rivers] falling. I don't remember seeing [Rivers] being hit. I don't remember anything at that point but coming back to at the stop sign."

(R. 142.) She realized that Rivers was dead after she saw the news later that night. (R. 145.) Finney testified that she tried to get Ketchum to agree to go to the police but, she said, Ketchum was terrified. They left her vehicle, a Honda Pilot, on a friend's property.

Officer Roland Frye of the Mobile County Sheriff's Department identified several photographs that showed blood splatter on various

4

sections of the undercarriage of the Honda. Forensic tests conducted on that blood showed that it matched Rivers's DNA. (R. 260.)

Officer Jonathan Rivers of the Mobile County Sheriff's Office testified that he transported Ketchum from the Washington County jail to Mobile. He said that Ketchum was very talkative and that during the drive Ketchum made a "spontaneous statement." At one point when they were driving though Citronelle, he said, Ketchum thought that he saw his mother and he asked if Off. Rivers would "'tell his mother that he did not mean to kill that man.'" (R. 214.)

On appeal, Ketchum raises the following issues.

## I.

Ketchum first argues that the circuit court erred in denying his requested jury instruction regarding "how the jury could consider the evidence of Finney's bad character in determining whether to credit any of her testimony." (Ketchum's brief at p. 13.) [3]

---

[3]Finney testified on cross-examination that she had a severe drug problem and that she had previously hit a United States Marshall and a former boyfriend with a vehicle she was driving. In his defense, Ketchum presented several witnesses who testified to the extent of Finney's drug use.

The record shows that Ketchum's requested jury instruction number 10 read: "'I charge you ladies and gentlemen of the jury, if the evidence convinces you that Lauren Kinney[4] is a woman of bad character and unworthy of belief, then you may disregard her evidence altogether.' Ashlock v. State, 367 So. 2d 560 (Ala. Crim. App. 1978)." (C. 215.) On this instruction is the handwritten note: "Given as modified." At the charge conference, a lengthy discussion was held on this requested instruction. (R. 302-310.) The circuit court noted that it would not give an instruction that named a specific witness and that the instruction unnecessarily called attention to the witness's gender. The circuit court indicated: "I will say you may consider any testimony regarding a witness's bad character, along with all of these other things that I talk about in the credibility charge. And to that extent, I will give it as modified." (R. 310.) The circuit court gave the following instruction:

> "There are certain principles of law which may help you in arriving at a verdict. It is your duty to try to reconcile all the testimony so that each witness will have spoken the truth. In the event that it is not possible to reconcile the testimony, then you may determine for yourselves wherein the truth lies And in so doing, you may accept or reject any part of the

---

[4]The requested instruction spells this witness's last name as "Kinney." However, the record states that her name is "Finney." (C. 215; R. 134.)

testimony of any witness in this case and consider only the testimony that you consider to be worthy of belief.

"In determining what the true facts are, you may take into consideration any natural interest or bias that a witness has as a result of any connection with the case. You may take into consideration the demeanor of the witness on the witness stand, such as whether the witness testified frankly or evasively. You may also consider any evidence offered of the bad character of any witness. You may in short use your good common sense in trying to arrive at the truth and find out what the true facts are.

"There is another principle of law that is applicable. In the event that you determine that any witness after being sworn has intentionally testified falsely to any material fact, then you in your discretion may disregard that witness's entire testimony. The principle of law is based on a theory that if a witness has intentionally testified falsely as to one material fact while under oath, he or she may well testify falsely to other material facts This does not apply in cases where a witness is confused or his or her memory might be a little vague because of a lapse of time, but only where you feel that under oath he or she has intentionally testified falsely to a fact that was material."

(R. 358-59.)

At the conclusion of the charges, Ketchum made no objection to the circuit court's failure to give his requested charge on bad-character evidence.[5] Also, at the charge conference when the circuit court indicated

---

[5]The only objection was to the circuit court's failure to give a charge on voluntary intoxication. (R. 367.) The circuit court noted that the defense had never submitted a request for an intoxication instruction and

that it would give a modified charge on Ketchum's requested charge,

Ketchum made no objection. Rule 21.3, Ala. R. Crim. P. provides:

> "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."

In Buford v. State, 891 So. d 423 (Ala. Crim. App. 2004), this Court

stated:

> "'The defendant is required to state with particularity the grounds of his objection to the court's refusal to give a requested charge.' Miller v. State, 673 So. 2d 819, 820 (Ala. Crim. App. 1995). Finally, '[i]n order to preserve for review an objection to the giving or the denial of a jury instruction, it is necessary for the appellant to state for the record upon what specific grounds the objection is made.' Cauley v. State, 681 So. 2d 1105, 1107 (Ala. Crim. App. 1996)."

891 So. 2d at 431. Thus, this issue is not properly preserved for review

on appeal.

Moreover, Ketchum argues that according to this Court's holding in

Ashlock v. State, 367 So. 2d 560 (Ala. Crim. App. 1978), the circuit court

erred in declining to give his requested instruction. The State argues

---

defense counsel stated: "Then I won't except that if I didn't give you one." (R. 367.)

8

that the requested charge was, in substance, given. It further argues that it was reasonable for the court to give a general instruction on bad character because both the State and the defense had presented witnesses "with notable character deficiencies." (State's brief at p. 23.) Lastly, the State argues that the circuit court's failure to give the requested instruction was harmless error.

In Ashlock the requested charge read: "I charge you, gentlemen of the jury, if the evidence convinces you that Wanda Cassidy is a woman of bad character, and unworthy of belief, then you may disregard her evidence altogether." Ashlock, 367 So. 2d at 560. We held that the circuit court erred in failing to give the instruction because evidence had been presented of Cassidy's bad character. "Under the evidence presented the charge is not abstract as there was evidence of her 'bad character.'" 367 So. 2d at 561.

Subsequent to Ashlock, this Court has relied on Ashlock to reverse only one case for a circuit court's failure to give a similar instruction. See Cook v. State, 437 So. 2d 1378 (Ala. Crim. App. 1983). The Alabama Supreme Court and this Court have affirmed the judgments in numerous other cases that raised the Ashlock argument. See Ex parte Wright, 494

9

So. 2d 745, 748 (Ala. 1986) ("Because the requested charges were covered by the trial court's oral charge and by other written charges to the same effect, we find no error in the trial court's refusal of [the bad character charge.]"); Dill v. State, 600 So. 2d 343, 353 (Ala. Crim. App. 1991) ("[A]ny error in refusing to give the charge would have been harmless because there were far more significant reasons for the jury to reject certain of the witnesses's testimony other than for the reason that they were persons of 'bad character'. … The jury was also thoroughly and properly instructed on those other reasons. Thus, even had a correct charge been presented, any error would have been harmless."); Adams v. State, 587 So. 2d 1265, 1269 (Ala. Crim. App. 1991) ("In [Ashlock] there was clear evidence of the witness's bad character. No such evidence is revealed, after careful review of the record, in the case now before us. In fact, the defense in this case did not call any witnesses to testify at trial. Defense counsel did, however, during cross-examination elicit certain testimony concerning the lifestyle of the victim; however, nothing even remotely rising to the showing of bad character in [Ashlock] was testified to during this trial."); Connolly v. State, 539 So. 2d 436, 438 (Ala. Crim. App. 1988) (issue not preserved for review on appeal because no specific objection

10

was made at trial); <u>Singletary v. State</u>, 473 So. 2d 556, 576 (Ala. Crim. App. 1984) ("<u>Ashlock</u> is clearly distinguishable from the instant case in that in <u>Ashlock</u> the error of the trial court that required a reversal of the case was in the refusal by the trial court of a charge requested in writing by defendant setting forth the principle urged by appellant as to the significance or value of character evidence, which defendant did not present to the trial court by a requested written charge or otherwise.").

Here, Ketchum admitted to Off. Rivers that he was driving the vehicle that hit the victim when he asked Off. Rivers to tell his mother that "he did not mean to kill that man." (R. 214.) The circuit court gave an instruction similar to the instruction that the Court relied on in <u>Ex parte Wright</u> to find no reversible error in a court's failure to give a similar charge.[6] Also, as we noted in <u>Dill</u>, there were "far more significant reasons for the jury to reject certain of [Finney's] testimony other than for the reason that [she was a] person of 'bad character.'" 600

---

[6]In <u>Wright v. State</u>, 494 So. 2d 726 (Ala. Crim. App. 1985), this Court discussed the instruction at length and held, in part, that the failure to give the requested instruction was harmless. On certiorari review, the Alabama Supreme Court stated that it did not need to reach the issue whether the instruction was harmless because the substance of the requested instruction had been given. See <u>Ex parte Wright</u>, 494 So. 2d at 748.

So. 2d at 353. Indeed, Finney testified that she had remembered little about what happened that night because of her extensive drug use that evening. "The jury was … thoroughly and properly instructed on those other reasons. Thus, even had a correct charge been presented, any error [in refusing to give it] would have been harmless." Dill, 600 So. 2d at 353. Based on the Alabama Supreme Court's holding in Ex parte Wright and this Court's holding in Dill, we find no reversible error because the substance of the requested charge was given and any possible error in failing to give the full requested instruction was harmless. For the foregoing reasons, Ketchum is due no relief on this claim.

## II.

Ketchum next argues that the circuit court erred in failing to hold a hearing outside the presence of the jury on the voluntariness of his statement to a police officer. On appeal, the State argues that Ketchum did not request a hearing outside the presence of the jury, that the circuit court's procedure was proper, and that Ketchum's statement was a spontaneous statement not governed by the Miranda[7] predicate.

---

[7]Miranda v. Arizona, 384 U.S. 436 (1966).

Off. Jonathan Rivers testified that he transported Ketchum from the Washington County jail to Mobile. The prosecutor questioned Off. Rivers about the drive and Off. Rivers testified that Ketchum was very talkative and that he made a "spontaneous statement" to him. (R. 207.) Ketchum's first objection to the admission of the statement was that there was no proper predicate. The circuit court told the prosecutor to lay a predicate. (R. 207.) A few questions later, defense counsel again objected and said that there had been nothing to suggest that the statement had been made voluntarily. (R. 208.) The circuit court again stated that the prosecutor should lay a proper predicate. Several minutes later defense counsel objected a third time and stated that the prosecutor had not questioned Off. Rivers about the voluntariness of the statement. At this point, the circuit court held a hearing outside the presence of the jury and the following occurred:

> "[Defense counsel]: Judge, before a statement of [Ketchum] can be admissible, there is two-fold, one, of course, is the reading of the Miranda rights; secondly, they have to show -- the State has to show that it was voluntarily made. So we don't know anything about the condition of [Ketchum] when he's put in the back of the car. We know it's a custodial environment. The deputy has testified that he had been making conversation with [Ketchum], but we don't know what he said. And they have to show there has been no promises made, no inducements, and you don't -- doesn't have to be

13

anything in great manner, it can be something innocuous. It can be also -- we don't know if any threats are made, if he's under drugs or alcohol, you know, the condition of [Ketchum] at all. He just got pulled out of jail, if he's discombobulated mentally. Probably this should be taken up outside the presence of the jury to get the full predicate in to see if he can do it, but I think he has to do it as a matter of law for the Court, and then, again, as a matter of fact for the jury.

"THE COURT: I think it does have to be done as a matter of fact for the jury. I mean, I think I can do it at the same time. I don't think that's required that it be bifurcated under these types of circumstances. But I do think there needs to be a little bit more of a predicate with regards to threats or promises, voluntariness, coherency, that type of think, okay.

"So to that -- [defense counsel], so to that limited extent, I'll sustain the objection at this time."

(R. 210-11.)

The current law in Alabama is that if a defendant files a motion to suppress a statement, he does not have to request that a hearing be held outside the presence of the jury because such a hearing is mandatory.

"Before the adoption of Rule 104, Ala. R. Evid., we held that '[A]n accused is not entitled to a hearing outside the presence of the jury unless he specifically requests one.' Cliff v. State, 518 So. 2d 786, 791 (Ala. Crim. App. 1987). Rule 104, Ala. R. Evid., which became effective January 1, 1996, makes mandatory a hearing on a motion to suppress outside the presence of the jury. See also Charles Gamble, McElroy's Alabama Evidence § 200.02(5) (5th ed. 1996)."[8]

---

[8]Rule 104(c), Ala. R. Evid., provides:

14

<u>Lewis v. State</u>, 27 So. 3d 600, 602 n. 1 (Ala. Crim. App. 2008). However, Rule 104 (c), Ala. R. Evid., imposes no duty on a judge to hold a hearing outside the presence of the jury when no motion to suppress or challenge to the evidence has been made.

First, the cases cited by Ketchum in his brief to this Court involve situations where the defendant filed a motion to suppress a confession or statement. Here, the record shows that Ketchum made no written or oral motion to suppress his statement. In fact, it was not until midway through the questioning of Off. Rivers that Ketchum mentioned the possibility of any type of hearing outside the jury's presence. Nor did Ketchum present any argument or evidence to contradict the evidence presented by Off. Rivers. "There is no reversible error in failing to hear evidence on the voluntariness of a confession outside the presence of the jury where there is no request for a hearing and there is no conflict in

---

> "In criminal cases, hearings on the admissibility of confessions or evidence alleged to have been obtained unlawfully <u>shall be conducted</u> out of the hearing and presence of the jury. Hearings on other preliminary matters shall be conducted out of the hearing and presence of the jury when the interests of justice require."

(Emphasis added.)

evidence as to the voluntariness on the main trial." Reynolds v. State, 346 So. 2d 979, 983 (Ala. Crim. App. 1977).

Also, unlike Ketchum's argument at trial as quoted above, this Court has noted that spontaneous statements are not governed by the Miranda predicate. In Borden v. State, 401 So. 2d 802 (Ala. Crim. App. 1981), the defendant was "being escorted to the jail cell 'he was mumbling under his voice in a bragging manner that he shot [the victim].'" 401 So. 2d at 802. This Court noted that "[t]he holding of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not apply to unsolicited volunteered statements. 384 U.S. at 478, 86 S.Ct. at 1630." Borden, 401 So. 2d at 802.

More recently in Shanklin v. State, 187 So. 3d 734 (Ala. Crim. App. 2014), we stated:

> "Because the undisputed evidence at the suppression hearing demonstrated that Shanklin made unsolicited statements to Chief Bobo, which were not in response to interrogation, Shanklin's statements to Chief Bobo do not fall within the purview of Miranda. Consequently, the circuit court did not err when it denied Shanklin's motion to suppress his statement to Chief Bobo as having been made in violation of Miranda."

187 So. 3d at 758. In reaching the conclusion that Shanklin's statement was admissible, we noted that the State presented evidence indicating

16

that Shanklin made the unsolicited statement at the police station, that Shanklin was asked no questions about the case, and that Shanklin was not promised, threatened, or coerced in any way to make the statement. See also Smith v. State, 489 So. 2d 638, 640 (Ala. Crim. App. 1986) ("A voluntary spontaneous statement made by an accused to police officers before any questions have been asked is admissible against the accused even though he has not been advised of his Miranda rights.").

Here, Off. Rivers testified that Ketchum was very talkative on the drive to Mobile. He testified that Ketchum was not given his Miranda rights, that Ketchum was asked no questions involving the case, that Ketchum was alert, that Ketchum did not appear to be intoxicated or be suffering from any mental incapacity, that Ketchum made the statement of his own free will, that Off. Rivers made no threats nor did he offer Ketchum any deals, that he did not speak about the investigation with Ketchum, that when he was passing through Citronelle Ketchum thought that he saw his mother at a gas station, and that Ketchum said to him " 'That's not my mom.' Then he asked me, 'To tell his mother that he did not mean to kill that man.'" (R. 214.)

Given the facts surrounding the statement and the fact that Ketchum did not move to suppress his statement, we cannot say that the circuit court abused its discretion in its handling of this evidence. Moreover, the State presented sufficient evidence to support the circuit court's ruling admitting the statement.

Based on the foregoing, we affirm Ketchum's conviction for manslaughter.

AFFIRMED.

Windom, P.J., and McCool and Minor, JJ., concur. Cole, J., concurs in part and dissents in part, with opinion.

COLE, Judge, concurring in part and dissenting in part.

Although I agree with the main opinion that the trial court did not commit reversible error in instructing the jury on "bad-character evidence," I would remand this matter to the trial court for a hearing on the admissibility of Colton Trent Ketchum's statement that "he did not mean to kill that man." (R. 214.) As to that portion of the opinion, I respectfully dissent.

The main opinion correctly outlines what transpired at trial in relation to the admission of testimony of Ketchum's inculpatory statement. Ketchum initially objected to Off. Rivers's testimony based upon there being "no proper predicate laid." (R. 207.) This objection was sustained, but after two additional questions related to Ketchum's statement, Ketchum reasserted the "[s]ame objection," then expressly argued that the prosecution had not "shown the statement [was] voluntary" and that the State did not "talk about reading him any rights." (R. 208.) After further testimony, Ketchum again asserted that there was a "voluntariness question." (R. 209.) When allowed to state the grounds for this "objection" outside the presence of the jury, Ketchum explained in detail, as outlined in the main opinion, that this involved a "two-fold"

19

inquiry of voluntariness and the Miranda requirements, and stated that "[p]robably this should be taken up outside the presence of the jury to get the full predicate in to see if he can do it, but I think he has to do it as a matter of law for the Court, and then, again, as a matter of fact for the jury." (R. 211 (emphasis added).) The trial court instructed the State that there needed "to be a little bit more of a predicate with regards to threats or promises, voluntariness, coherency, that type of thing," but held that the proceedings did not need to be "bifurcated under these type of circumstances." (R. 211.) After further testimony explaining what had transpired before Ketchum made the statement in question, Ketchum stated: "Judge, I would renew my objection." (R. 214.) The trial court overruled the objection, and Off. Rivers testified that Ketchum told him "[t]o tell [Ketchum's] mother that he did not mean to kill that man." (R. 214.)

When the admissibility of a statement made by a defendant in a criminal case is in question, it is clearly a better practice for an attorney to file a written pretrial motion to suppress the evidence. It is, however, well settled that "'a pretrial motion to suppress is not necessary, and that objection to the introduction of illegally obtained evidence may be made

20

for the first time when illegally obtained evidence is offered at trial." Lewis v. State, 27 So. 3d 600, 602 (Ala. Crim. App. 2008) (quoting Biggs v. State, 346 So. 2d 467, 469 (Ala. Crim. App. 1976)). I agree with the main opinion that "Rule 104(c), Ala. R. Evid., imposes no duty on the judge to hold a hearing outside the presence of the jury when no motion to suppress is filed or challenge to the evidence has been made." ___ So. 3d at ___. My primary disagreement with the main opinion is that I believe Ketchum sufficiently challenged the evidence to trigger the requirement that a hearing be conducted outside the presence of the jury. "The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it.'" Ex parte Parks, 923 So. 2d 330, 333 (Ala. 2005) (quoting Ex parte Works, 640 So. 2d 1056, 1058 (Ala. 1994), citing Jennings v. State, 588 So. 2d 540, 541 (Ala. Crim. App. 1991)). Ketchum sufficiently notified the trial court of the issue raised in this case.

Rule 104(c), Ala. R. Evid., is very clear:

> "In criminal cases, hearings on the admissibility of confessions or evidence alleged to have been obtained unlawfully shall be conducted out of the hearing and presence of the jury. Hearings on other preliminary matters shall be

21

conducted out the hearing and presence of the jury when the interests of justice require."

(Emphasis added.) In <u>Jackson v. Denno</u>, 378 U.S. 368, 394, 84 S. Ct. 1774, 1790, 12 L. Ed. 2d 908 (1964), the United States Supreme Court considered whether a procedure in the State of New York that permitted a jury to determine the voluntariness of a confession passed constitutional muster and determined that it did not. The Court explained:

> "Jackson's position before the District Court, and here, is that the issue of his confession should not have been decided by the convicting jury but should have been determined in a proceeding separate and apart from the body trying guilt or innocence. So far we agree and hold that he is now entitled to such a hearing in the state court."

The Alabama Supreme Court subsequently recognized that

> "there is much in the lengthy [<u>Jackson</u>] opinion which leads us to the inevitable conclusion that the Supreme Court of the United States will not uphold a conviction where the question as to the voluntariness of the confession is presented in the presence of the jury if a request for a hearing outside the presence of the jury is made."

<u>Duncan v. State</u>, 278 Ala. 145, 164, 176 So. 2d 840, 858 (Ala. 1965). It is now well settled that a defendant who challenges the admissibility of a statement and requests a hearing is entitled to one outside the presence of the jury. <u>See, e.g.,</u> <u>Lewis v. State</u>, 27 So. 3d 600, 602 (Ala. Crim. App.

22

2008). Ketchum made four objections to the admission of his statement; he stated grounds for those objections; and he argued that the testimony should be taken outside the presence of the jury. I interpret his request to the trial court to be a request for a hearing before the trial judge only, which should be followed ("then, again") by a separate presentation of the evidence to the jury. I believe that Ketchum sufficiently challenged the evidence and made clear to the trial court his belief that a hearing outside the presence of the jury was required.

Although I generally agree with the main opinion that evidence presented to the trial judge, in the presence of the jury, would have been "sufficient evidence to support the circuit court's ruling admitting the statement" ___ So. 3d at ___, I do not believe that this conclusion is relevant to the issue before this Court. The law states that a defendant is entitled to a hearing outside the presence of the jury when the admissibility of a confession or an incriminating statement is in question. It would be inappropriate to speculate how Ketchum's cross-examination of Off. Rivers would have changed had the jury not been present. Furthermore, this Court cannot speculate whether the defense would have presented additional evidence from witnesses, other than Off.

23

Rivers, had it been granted a hearing outside the jury's presence. It is clear, however, that Ketchum would have been allowed to testify regarding the admissibility of his statement in a hearing outside the presence of the jury without being subject to cross-examination regarding the facts of the crime. Rule 104(d), Ala. R. Evid., states that "[t]he accused does not, by testifying at a preliminary hearing on the admissibility of a confession, become subject to cross-examination as to other issues in the case." This limitation on cross-examination would not apply if Ketchum had testified in the presence of the jury. Thus, although Ketchum may have chosen not to testify regarding the admissibility of his statement, Ketchum "was deprived of his chance to testify about the circumstances relating to the voluntariness of his statement," Ex parte Jackson, 836 So. 2d 973, 975 (Ala. 2001), when he was not granted an evidentiary hearing outside the jury's presence. Clearly, a hearing outside the presence of the jury offers the defense additional avenues to challenge the admissibility of a confession that are not available in a hearing held in the jury's presence. Thus, the apparent admissibility of Ketchum's statement based upon testimony taken in the presence of the

24

jury should not be a determining factor in deciding whether Ketchum was entitled to an evidentiary hearing outside the presence of the jury.

Although I would find that the trial court erred in refusing to conduct a hearing outside the presence of the jury, this finding does not require a reversal of Ketchum's conviction. In Ex parte Jackson, 836 So. 2d at 976 (Ala. 2001), the Court addressed the same issue and explained the appropriate remedy:

> "In accordance with Smith [v. State, 554 So. 2d 451 (Ala. 1989)], we remand this case for a hearing to determine the admissibility of Jackson's statement. If, after the hearing, the trial court determines that Jackson's statement was voluntarily made and was properly admitted into evidence for the jury's consideration, a new trial is not required. See Jackson v. Denno, 378 U.S. at 393-94, 84 S. Ct. 1774 (stating that if the statement was properly admitted into evidence, 'we see no constitutional necessity at that point for proceeding with a new trial, for [the defendant] has already been tried by a jury with the confession placed before it and has been found guilty'). However, if the trial court determines that Jackson's statement was not voluntary and therefore was not admissible into evidence, then there must be a new trial, at which the statement is not admitted into evidence."

Therefore, I would remand this matter to the trial court with instructions for the trial court to conduct an evidentiary hearing on the admissibility of Ketchum's statement.